MICHAEL J. CURLS (SBN 159651)
NICHELLE D. JONES (SBN 186308)
**LAW OFFICE OF MICHAEL J. CURLS**
4340 Leimert Blvd., Suite 200
Los Angeles, CA 90008
Telephone:  (323) 293-2314
Facsimile:   (323) 293-2350

Attorneys for Plaintiffs THE ESTATE OF CECIL ELKINS, JR., CREASHA ELKINS, VALIECIA PEREZ, DYLAN ELKINS, DEVIN ELKINS, TINA TERREL and CECIL ELKINS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF CECIL ELKINS, JR., CREASHA ELKINS, individually and as Guardian Ad Litem for VALIECIA PEREZ, DY. ELKINS and DE. ELKINS, TINA TERREL and CECIL ELKINS<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>CALIFORNIA HIGHWAY PATROL, STATE OF CALIFORNIA, COUNTY OF TULARE, TULARE COUNTY SHERIFF'S DEPARTMENT, TULARE COUNTY REGIONAL GANG ENFORCEMENT TEAM, CITY OF PIXLEY, and DOES 1 THROUGH 25, INCLUSIVE,<br><br>　　　　　Defendants<br>_____ | Case No.: 1:13-CV-01483-AWI-SAB<br><br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISQUALIFY DEFENSE COUNSEL<br><br><br>**Date:**　　　**December 16, 2019**<br>**Time:**　　　**1:30 p.m.**<br>**Dept**　　　**2, 8th Floor**<br>**Judge:**　　**Hon. Anthony W. Ishi** |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on December 16, 2019 at 1:30 p.m. in

Courtroom 2 of the United States District Court, Eastern District of California,

located at 2500 Tulare Street, Fresno, California, 93721, Plaintiffs THE ESTATE

OF CECIL ELKINS', et al. will and hereby do move this Court for an order disqualifying Attorney Robert J. Rogoyski and the Office of the Attorney General of California from representing Defendant HIPOLITO PELAYO in this action.

This Motion is made pursuant to Cal. R. Prof.Cond.4.2 and American Bar Association R. Prof. Cond. 4.2 prohibiting communication with a person represented by Counsel on the grounds that Robert J. Rogoyski and Attorney Timothy Bragg, Guardian Ad Litem to minors De. Elkins and Dy. Elkins outside of the presence of and without the consent of Plaintiffs' Counsel.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Nichelle D. Jones, the records and files of this Court, and all other matters of which the Court may take judicial notice.

DATED: November 16, 2019          **LAW OFFICE OF MICHAEL J. CURLS**


By:_____/s/Nichelle D. Jones_____
Nichelle D. Jones, Attorneys for Plaintiffs

ii

# TABLE OF CONTENTS

| | |
|---|---|
| **MEMORANDUM OF POINTS AND AUTHORITIES** | 1 |
| **I.   INTRODUCTION** | 1 |
| **II.  PROCEDURAL HISTORY** | 3 |
| **III. STATEMENT OF FACTS** | 5 |
| **IV. ARGUMENT** | 7 |
| **A. LEGAL STANDARD** | 7 |
| **B. _EX PARTE_ COMMUNICATION WITH REPRESENTED PARTIES** | 8 |
| **C. CONFLICT OF INTEREST** | 11 |
| **1.  Attorney-Client Privilege** | 11 |
| **V.  CONCLUSION** | 14 |

# TABLE OF AUTHORITIES

**Cases**

| | |
|---|---|
| _City and Cnty. Of San Francisco v. Cobra Solutions, Inc._ (2006) 387 Cal.4th 846 | 13 |
| _Eilliott v. Versa CIC, L.P._ (2018) 328 F.R.D. 554 | 9 |
| _Flatt v. Super Ct._ (1994) 9 Cal.4th 275, 283 | 14 |
| _Fremont Indemn. Co. v. Fremont Gen. Corp._ (2d Dist. 2006) 143 Cal.App.4th 50 | 12 |
| _Goldberg v. Warner Chappell Music, Inc._ (2d Dist. 2005) 125 Cal.App.4th 753 | 13 |
| _H.F. Ahmanson & Co. v. Salomon Bros, Inc._ (2d Dist. 1999) 229 Cal.App.3d 1445 | 11 |
| _Hendricksen v. Great Am. Sav. & Loan_ (1st Dist. 1992) 11 | 14 |

**MOTION TO DISQUALIFY COUNSEL**
**(Elkins v. C.H.P. 1:13-CV-01483-AWI)**

| | |
|---|---|
| Cal.App.4th 109 | |
| *Lews v. Telephone Employees Credit Union* (9th Cir. 1996) 87 F.3d 1537 | 8 |
| *Lucent Techs, Inc. v. Gateway, Inc.* (S.D. Cal.May 15, 2007) No. 02CV2060-B (CAB) | 14 |
| *Meza v. H. Muehlsein & Co.* (2d Distr. 2009) 176 Cal.App.4th 969 | 13, 14 |
| *Rosenfeld Constr. Co. v. Super.Ct.* (1991) 235 Cal.App.3d 566 | 13 |
| *Satler v. Purser* (1971) 12 NC App 206, 182 SE 2d 850 | 10 |

**Statutes**

| | |
|---|---|
| Federal Rules of Civil Procedure 17 (c)(2) | 9 |
| North Carolina General Statutes 1A-1, Rule 17 | 10 |
| North Carolina Rules of Civil procedure Rule 17 | 10 |
| North Carolina Rules of Professional Conduct Rule 1.2 | 10 |

**Treatises/Other**

| | |
|---|---|
| Model Rules of Professional Conduct of the American Bar Association Rule 1.1.4 | 8 |
| Rules of Professional Conduct of the North Carolina State Bar Rule 4.2 | 9 |
| Rules of Professional Conduct of the State Bar of California Rule 4.2 | 8 |
| Rules of Professional Conduct of the State Bar of California Rule 1.7 | 11 |

| United States District Court, Eastern District of California, Local Rule 180 | 7 |
| --- | --- |

**MOTION TO DISQUALIFY COUNSEL**
**(Elkins v. C.H.P. 1:13-CV-01483-AWI)**

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiffs, The Estate of Cecil Elkins, et al. bring the instant motion to address a conflict of interest that has arisen in light of *Ex Parte* communications between Attorney Timothy Bragg ("Mr. Bragg"), Guardian Ad Litem to minor plaintiffs Dy. Elkins and De. Elkins and Mr. Robert Rogoyski ("Mr. Rogoyski"), attorney for Defendant Hipolito Pelayo.

The Law Office of Michael J. Curls has worked tirelessly for the family of Cecil Elkins, Jr. since his untimely death in November 2012, taking this matter through substantial law and motion, including but not limited to the reversal of this Court's Order on Defendants' Motion for Summary Judgment by the Ninth Circuit Court of Appeal.  The family retained this office collectively to seek redress from the fatal killing of Mr. Elkins', Jr.  The passing of time has brought about a plethora of unique legal issues arising from the change of custodial status of the minor plaintiffs and the death of Cecil Elkins, Sr.  Notwithstanding the challenges that this family has faced as it pertains to the death of Cecil, Jr., they have remained steadfast in their united desire to move forward and bring this case to a final resolution.

Mr. Bragg was appointed Guardian Ad Litem to minor plaintiffs Dy. Elkins and De. Elkins on or about June 7, 2019. Robert Rogoyski of the Attorney General's Office of the State of California, counsel for Defendant Hipolito Pelayo, has had *Ex Parte* conversations with Mr. Bragg about this case without the consent of Michael J. Curls or Nichelle D. Jones of The Law Office of Michael J. Curls ("Plaintiffs' Counsel"). While Plaintiffs' Counsel does not have the details of the communications, it is apparent that Mr. Bragg and Mr. Rogoyski have had substantive communications because on September 16, 2019, during a

1

telephonic case management conference, Mr. Rogoyski announced to the court that a settlement, in principal, had been reached with the minors Dy. Elkins and De. Elkins.  It must be assumed that the conversations were substantive because at the time settlement was reached, Mr. Bragg had not had any substantive conversations about the merits of the case with Michael J. Curls or Nichelle D. Jones, Attorneys for the Plaintiffs.  Thus, if we are to conclude that Mr. Bragg made a good faith determination that settlement of this case, for the amounts offered by the defense, was in the best interest of the minors, it could only follow that the decision was based solely on the one-sided representations of defense counsel.

At this point in the litigation, there appears to be an adversarial relationship between Plaintiffs' counsel and against Mr. Bragg and Mr. Rogoyski which creates a conflict of interest.  First, this is a wrongful death action, with the Plaintiffs' loss of love, companionship and support being at issue for damages; so, to the extent that Mr. Bragg shared any information with Mr. Bragg about family dynamics in this case, Plaintiffs' are prejudiced.

Prior to Mr. Bragg's appointment as Guardian Ad Litem, Mr. Rogoyski contacted De. Elkins and Dy. Elkins Foster Mother[1] and Mr. Bragg to advise that actions should be initiated in the probate court to protect the minors against his perceptions of breaches of fiduciary duty committed by Dennis Elkins in that action.  In addition, to the extent that Mr. Bragg is providing legal counsel to Mr. Bragg such as filing a motion to approve the compromise of claim on behalf of the minors; advising Mr. Bragg on how to eliminate Plaintiffs' Counsel's ability to recover attorney's fees and costs incurred in this litigation; and/or counsel on removal of moving party's office as counsel of record for the minors, (*see*

---

[1] The Foster Mother's name shall not be revealed in this motion in an effort to protect her rights to privacy. As such, she will be referred to as "The Foster Mother" in any reference in these papers.

Declaration of Nichelle D. Jones attached hereto) a true conflict of interest exists because Mr. Rogoyski has taken on the role as advocate for the minor's interest while concurrently representing the interests of Defendant Pelayo.  The conduct of Mr. Rogoyski would necessarily be imputed to the California Attorney General's Office who is privy to all of the information received by Mr. Rogoyski from Mr. Bragg.

Additionally, Plaintiffs' counsel is now in a position where there cannot be candid conversations between Mr. Bragg about the merits of this case because of a concern that Mr. Bragg will not honor the Attorney Client Privilege that would exist between Counsel and De. Elkins and Dy. Elkins if they were competent plaintiffs in this case.  Without such dialogue, Mr. Bragg can not be in a position to abide by his duties as Guardian Ad Litem to De. Elkins and Dy. Elkins in making decisions pertaining to this litigation that are in the best interests of these minors.[2]

Based on the forgoing, good cause exists to disqualify Mr. Rogoyski and the State of California Attorney General's Office as counsel in this case and to enjoin Mr. Rogoyski and his office from sharing any information learned form Mr. Bragg with newly substituted counsel.

## II.

## PROCEDURAL  HISTORY

Plaintiffs bring the instant action as a result of the wrongful death of decedent CECIL ELKINS, JR. ("Decedent") who was fatally shot by California Highway Patrol Officer HIPOLITO PELAYO. ELKINS was shot at least nine times.  Of the nine documented shots, 3 were from front to back, including the

---

[2] A simultaneous motion to Dismiss Timothy Bragg as Guardian Ad Litem to De. Elkins and Dy. Elkins has also been filed in this matter.

3

fatal shot to ELKINS' right chest.   A complaint for damages was filed on September 12, 2013. [Doc.1]

On or about February 3, 2016, Defendant Hipolito Pelayo moved for Summary Judgment on all of Plaintiffs' claims. [Doc.103]  While the parties awaited a ruling on the Motion for Summary Judgment, it was discovered that the Order to Appoint the Elkins' biological mother, Creasha Elkins as Guardian Ad Litem was never signed by the Court.  By this time, Creasha Elkins had lost custody of the boys and their Grandfather, Plaintiff, Cecil Elkins Sr. ("Cecil Ekins, Sr.") was appointed Guardian Ad Litem. [Doc. 121]  Defendant's Motion for Summary Judgment was granted, and the case was dismissed on or about July 7, 2016.  [Doc.126]  Plaintiff's appealed and the order of dismissal was reversed by the United States Court of Appeal on or about August 2, 2018. [Docs. 133 – 134].

Cecil Elkins, Sr. passed away on November 17, 2018. [Doc.163]  After his death, Cecil Sr.'s son, Dennis Elkins, Executor of the Estate of Cecil Elkins Sr. was appointed Guardian Ad Litem. [Docs. 171 – 172]  Defendants moved the court to reconsider the appointment of Dennis Elkins as Guardian Ad Litem based on a perceived breach of fiduciary duty related to the pending probate of Cecil Sr.'s estate.  Dennis Elkins voluntarily withdrew as Guardian Ad Litem and the boys dependency lawyer, Timothy Bragg was appointed Guardian Ad Litem on or about June 7, 2019.  [Doc. 193]

The Law Office of Michael J. Curls is attorney of record for De. Elkins and Dy. Elkins.  Despite actual knowledge that The Law Office of Michael J. Curls is counsel of record for De. Elkins and Dy. Elkins, Mr. Rogoyski continued to engage in substantive communication with Mr. Bragg, without Plaintiffs' Counsel consent or participation.  Because Mr. Rogoyski has placed this office in an adversarial position with the minor's Guardian Ad Litem, we are unable to provide

effective legal counsel to De. Elkins and Dy. Elkins via their Guardian Ad Litem. Particularly, whereas here, this office cannot share litigation strategy or case details for fear of the information being disseminated to the defense.  Moreover, to the extent that Mr. Bragg has shared information about the family dynamics of the Elkins' family, Plaintiffs are prejudiced by these *Ex Parte* communications. By his actions, Mr. Rogoyski has become an advocate for Timothy Bragg, De. Elkins and Dy. Elkins.  As such, there is an incurable conflict that is attributable to the entire California Attorney General's office.  As such, disqualification is required.

### III.

### STATEMENT OF FACTS

After the United States Court of Appeal reversed the Order of Dismissal following Defendant's Motion for Summary Judgment, Plaintiffs counsel began having conversations about the depositions of De. Elkins and Dy. Elkins that were still outstanding.  With full knowledge that De. Elkins and Dy. Elkins were represented by counsel, Mr. Rogoyski contacted the minor's Foster Mother to schedule the deposition.  To facilitate deposition scheduling logistics, Plaintiffs' counsel also had conversations with De. Elkins' and Dy. Elkins' Foster Mother. The Foster Mother shared her concern about the possible scope of questions that would occur at deposition and the potential effect on the minors.  Plaintiffs' counsel had a similar conversation with Timothy Bragg who shared the Foster Mother's concerns.

Plaintiffs' Counsel attempted to meet and confer with Mr. Rogoyski to determine if there could be an accommodation with the deposition date that fit the boys school schedule and to see if an agreement could be reached regarding the scope of deposition questions to be asked at deposition.  Counsel were not able to reach an agreement prior to the death of Cecil, Sr.  *See* Exhibit "A" to the

Declaration of Nichelle D. Jones, a true and correct copy of email correspondence between Nichelle D. Jones and Robert Rogoyski regarding the depositions of De. Elkins and Dy. Elkins.

 After Cecil Sr.'s death, Plaintiffs' Counsel was contacted again by the Foster Mother who reported that she was contacted again by Mr. Rogoyski and informed that Dennis Elkins was deliberately committing fraud against De. Elkins and Dy. Elkins by cutting them out of Cecil Sr's estate.  As it turned out, there was absolutely no malice or fraud on the part of Dennis Elkins and the issue reported by Mr. Rogoyski was based on incorrect information provided to probate counsel at the time that the Petition to Administer Mr. Elkins, Sr.'s estate was filed. The error was immediately rectified.  However, because Dennis Elkins did not want to be a hinderance to De. Elkins and Dy. Elkins standing in this litigation, he voluntarily agreed to withdraw as Guardian Ad Litem, and to dismiss the causes of action for Cecil Elkins, Sr.  Mr. Timothy Bragg was subsequently appointed as Guardian Ad Litem to De. Elkins and Dy. Elkins and Mr. Rogoyski and Mr. Bragg continued to have *Ex Parte* communications about the case after Mr. Bragg's appointment as Guardian Ad Litem.

 Although it became clear to Plaintiffs' Counsel that Mr. Bragg and Mr. Rogoyski were having ongoing settlement discussions, **not one** settlement offer has been conveyed to Plaintiffs' Counsel since Mr. Bragg's appointment. Nevertheless, on the telephonic status conference on September 16, 2019, Mr. Bragg reported to the Court and Plaintiffs' Counsel that a settlement had been reached, in principal, with the minors.  This was the **first** notice that Plaintiffs' counsel had about any settlement agreement and as of the time of filing this

6

motion, no settlement offer pertaining to the minor's only has been conveyed to Plaintiffs' Counsel.[3]

On or about November 12, 2019, Defendant filed a request for settlement conference on behalf of the minors only. [Doc.193]  As a result of the issues set forth herein, the parties and counsel cannot proceed with a settlement conference without further orders from this court.

**IV.**

**ARGUMENT**

**A. LEGAL STANDARD**

While it appears that this issue has arisen in other cases, surprisingly, there is no case on point in the Ninth Circuit that addresses opposing counsel's ability to have *Ex Parte* communication with a Guardian Ad Litem, whose wards are represented by counsel, without the knowledge or consent of counsel for the ward.  However, in review of the applicable rules, case law and other opinions, it appears that the conduct of Mr. Rogoyski and Mr. Bragg as set forth above is in violation of the rules.

Attorneys appearing before the United States District Court for the Eastern District of California are subjected to California law governing professional conduct.  In the absence of an applicable standard therein, the Model Rules of Professional Conduct of the American Bar Association may be considered guidance.  *See* L.R. 180 (e).

---

[3] Prior to Mr. Bragg's appointment two offers of settlement had been made.  One on November 8, 2019, the same date that Counsel learned that Cecil Sr. was gravely ill and not expected to survive to the then scheduled trial date; and a second in January 2019 when there was no guardian ad litem to De. Elkins. and Dy. Elkins.  As a result of Cecil Sr.'s health and subsequent death, Plaintiffs' Counsel could not respond to the last two settlement demands.  To the extent that the last offer was global, Plaintiffs' Counsel is particularly perplexed as to how Mr. Bragg could have reached an agreement and moreover why defense counsel refuses to convey an amended offer pertaining to the minors only, directly to Plaintiffs' Counsel, if such an offer exists.

7

### B. *EX PARTE* COMMUNICATIONS WITH REPRESENTED PARTIES

California law prohibits attorneys from communicating "directly or indirectly" about the subject of representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer.  Rules of Professional Conduct of the State Bar of California Rule 4.2.  Violators of the rule are subject to sanctions by court, such as disqualification as counsel.  *Lewis v. Telephone Employees Credit Union* (9th Cir. 1996) 87 F.3d 1537, 1558.

The Model Rules of Professional Conduct of the American Bar Association has a similar mandate which states:  "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

Comment [4] Model Rules of Professional Conduct Rule 1.14 states:

"If a legal representative has already been appointed for the client, the lawyer should ordinarily look to the representative for decisions on behalf of the client.  In matters involving a minor, whether the lawyers should look to the parents as natural guardians may depend on the type of proceeding or matter which the type of proceeding or matter in which the lawyer is representing the minor. If the lawyer represents the guardian as distinct from the ward and is aware that the guardian is acting adversely to the ward's interest, the lawyer may have an obligation to prevent or rectify the guardian's misconduct. See Rule 1.2(d)."

Here, although Mr. Bragg is a licensed California attorney, he was not retained as "Attorney Ad Litem" for De. Elkins and Dy. Elkins. The Court's appointment order makes it clear that Mr. Bragg was appointed as guardian ad

8

litem to De. Elkins and Dy. Elkins solely "for the purposes of this action" pursuant to Rule 17(c)(2). "By citing Rule 17(c)(2), the Court's order makes clear that the Court appointed [Mr. Brag] to represent [De. Elkins and Dy. Elkins] for the sole purpose of this action and not on the ground that he is [De. Elkins and Dy. Elkins] general representative." *Elliott v. Versa CIC, L.P.* (2018) 328 F.R.D. 554, 556.

The North Carolina State Bar addressed this issue in 2002 Formal Ethics Opinion 8 adopted January 24, 2003 entitled "Direct Contact with Lawyer Appointed Guardian Ad Litem for Minor Plaintiff. The inquiry involved an action alleging medical malpractice brought on behalf of a child, who was injured, and the child's parents. Plaintiff-Attorneys represented the child and both parents. A private lawyer was appointed by the court to serve as guardian ad litem for the minor. At mediation, defense attorneys asked to meet privately with the guardian ad litem to discuss the child's case and the plaintiffs' attorneys denied the request maintaining that the guardian ad litem is their client and, pursuant to Rule 4.2(a) of the Rules of Professional Conduct[4], stating that defense attorneys cannot communicate with represented clients without their consent. The second part of the inquiry was "If a guardian ad litem is a lawyer, is he or she still a client represented by counsel for the purposes of Rule 4.2, thus prohibiting direct contact by opposing counsel without consent of the guardian ad litem's lawyer?"

The defense attorneys argued that, as a lawyer, Guardian Ad Litem, represented the child and therefore, had a professional responsibility to exercise independent professional judgment on behalf of the child, which included making an independent professional judgment on behalf of the child, which included making an independent inquiry of the defense attorney's proposals and positions. The defense attorneys further contended that the plaintiffs' attorneys could not

---

[4] Rule 4.2 of the North Carolina State Bar rules of professional conduct mirrors rule 4.2 of the California and American Bar Association rules.

interfere with the guardian ad litem's decision on whether to communicate privately with the defense attorneys.  The second part of the inquiry was if the guardian

The Opinion concluded that:

"Rule 17(a) and (b) of the North Carolina Rules of Civil Procedure require an action to be brought by the "real party in interest" and, in the case of a minor, by a general guardian or, if there is none, by an appointed guardian ad litem. As a party, the guardian ad litem may choose to be represented by legal counsel and permit legal counsel to make decisions about the strategy for the litigation. See Rule of Professional Conduct 1.2, cmt. [1] ("In questions of means, the lawyer should assume responsibility for technical and legal tactical issues...."). The fact that the guardian ad litem is a lawyer does not make him or her co-counsel for the purpose of litigating the case. Therefore, opposing counsel must comply with Rule 4.2 and respect the decision of the guardian ad litem's trial counsel to deny a request to communicate privately with their client, the guardian ad litem."

The role and responsibilities of a guardian ad litem are established by the court making the appointment as well as by statute and case law. See, e.g. , N.C.G.S. 1A-1, Rule 17; Satler v. Purser,  12 NC App 206, 182 SE 2d 850 (1971). These remain the same whether the person appointed is a lawyer or not. Nevertheless, if a lawyer is appointed, he or she must fulfill the responsibilities of the guardian ad litem in a manner that is consistent with the requirements of the Rules of Professional Conduct. This means that the lawyer must be honest, avoid conflicts of interest, and exercise professional judgment in making decisions about matters that are within

10

the purview of the guardian ad litem such as whether a settlement

proposal should be accepted."

While we are not suggesting that the actions of Mr. Bragg or Mr. Rogoyski were malicious, they were definitely intentional and serious enough to mandate disqualification in this case.  First,  based on the last settlement offer, which was global, Mr. Rogoyski never conveyed an alternate settlement offer to Plaintiffs' Counsel so that the pros and cons could have been discussed with Mr. Bragg.  In addition, Mr. Rogoyski never inquired to Plaintiffs' Counsel whether or not he had permission to initiate settlement discussions on the minor's behalf directly with Mr. Bragg.  By the time our office made contact with Mr. Bragg to discuss case strategy, Mr. Bragg's mind was made up about settlement and he appeared to be poisoned against this office to a point that it would be virtually impossible for an attorney client relationship to exist between Mr. Bragg as Guardian ad Litem to De. Elkins and Dy. Elkins and Plaintiffs' Counsel. This bell cannot be un-tolled and unfortunately, the only solution to this dilemma is the removal of Mr. Rogoyski, The California Attorney General's office as defense counsel; along with the dismissal of Mr. Bragg as Guardian Ad Litem per the simultaneous motion filed herewith.

## C. **CONFLICT OF INTEREST**

### 1. **Attorney-Client Privilege**

Pursuant to Rule 1.7(a) of the California Rules of Professional Conduct, an attorney may not represent a new client whose interests are adverse to those of a former client on a matter in which the attorney has obtained confidential information. Cal.R.Prof.Conduct 1.7(a).

It is well settled that actual possession of confidential information need not be proved in order to disqualify counsel.  *H.F. Ahmanson & Co. v. Salomon Bros., Inc.* (2d Dist. 1999) 229 Cal.App.3d 1445, 1452.  If there is a "substantial relationship" between counsel and the person holding confidential information, access to said information is

11

presumed, and disqualification is mandatory.  *Fremont Indemn. Co. v. Fremont Gen. Corp.* (2d Dist. 2006) 143 Cal.App.4th 50, 67.

As set forth above, any information communicated by this office to Mr. Bragg is subject to the Attorney-Client Privilege.  Thus as a result of the *Ex Parte* communications between Mr. Bragg and Mr. Rogoyski, Plaintiffs' Counsel cannot communicate case strategy effectively advise Mr. Bragg on the reasonableness, or lack thereof, of Defendant's settlement offer.

### 2.  Mr. Rogoyski as Advocate for De. Elkins, Dy. Elkins, Mr. Bragg and Defendant Hipolito Pelayo

By taking the affirmative actions detailed above, Mr. Rogoyski has placed himself in the position of advocate for both his client, Defendant Hipolito Pelayo as well as the minor plaintiffs and their Guardian Ad Litem.  Mr. Rogoyski's actions include but are not limited to written and oral communication regarding substantive matters related to this case; engaging in settlement dialogue meaningful enough, to assure Mr. Bragg, in his capacity as fiduciary to the minors, to accept Mr. Rogoyski's counsel regarding settlement of the minors' claims without feeling the need to consult with the minors' counsel; reporting his intent to file a motion for approval of minors' compromise on Mr. Bragg's and the minors' behalf; communicating that he has conducted research on Plaintiffs' counsel ability to recover fees for their representation of De. Elkins and Dy. Elkins; and reporting to the minors' Foster Mother and Mr. Bragg that action should be taken against Dennis Elkins as a result of the Petition to Administer the Estate of Cecil Elkins, Sr.

The actions of Mr. Rogoyski exceed those of officer of the court bringing potential violations to light to the extent that Plaintiffs' Counsel was completely overstepped when these issues were reported.  This Court has been generous in allowing informal conference calls to address the specialized issues that have come to light in this case.  Had these issues been addressed with Counsel and the court instead of by making Ex

12

Parte communications to the Foster Mother and Mr. Bragg which appear to have thrown them into a panic of sorts, we would have been able to resolve each of the issues that have arisen from the death of Cecil Sr. without the breakdown of relationships that have occurred from Mr. Rogoyski acting as advocate to the minor plaintiffs and his client.  By virtue of his conduct, Robert Rogoyski has essentially become a legal advocate for De. Elkins, Dy. Elkins and Timothy Bragg.  Switching sides in the same action is "the most egregious conflict of interest."  *See Pound v. DeMeraDeMera Cameron* (5th Dist. 2005) 135 Cal.App.4th 70, 76.

### 3.  Under California Law, the Conflict Is Imputed to the State of California Office of the Attorney General

In California, an attorney's individual conflict of interest is imputed to his firm because "attorneys, working together and practicing law in a professional organization, share each other's, and their clients, confidential information."  *City and Cnty. Of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 846, 847-848; *see also Rosenfeld Constr. Co. v. Super.Ct.* (1991) 235 Cal.App.3d 566, 573 ("It has long been recognized … that knowledge by any member of a law firm is knowledge by all of the attorneys in the firm, partners as well as associates.")  The vicarious disqualification rule is based on a "pragmatic recognition that the confidential information will work its way to the non-tainted attorneys at some point."  *Goldberg v. Warner Chappell Music, Inc.* (2d Dist. 2005) 125 Cal.App.4th 753, 765.

Vicarious disqualification of the entire office is compelled, where, as here, an attorney's disqualification results from contemporaneous work the opposing side of the same lawsuit.  *See Meza v. H. Muehlstein & Co.* (2d Dist. 2009) 176 Cal.App.4th 969, 978. ("As a general rule in California, where an attorney is disqualified from representation, the entire law firm is vicariously disqualified as well.  This is especially true where the attorney's disqualification is due to his prior representation of the opposing side during the same lawsuit."); *see also Henricksen v. Great Am. Sav. &*

13

*Loan* (1st Dist. 1992) 11 Cal.App.4th 109, 117 ("Where an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law." *and see Lucent Techs, Inc. v. Gateway, Inc.* (S.D. Cal. May 15, 2007) No. 02CV2060-B(CAB)   Numerous other cases have reached the same result.   *See Meza supra* 176 Cal.App.4th at 978-80 (ethical wall between an attorney with confidential information who switched sides in the same lawsuit did not prevent disqualification of entire firm)

No district court cases in the Ninth Circuit have permitted the presumption to be rebutted where the conflict was generated in the context of a single litigation.   *Lucent supra* 2007 WL 1461406, at *4.   If an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law.   *Flatt v. Super. Ct.* (1994) 9 Cal.4th 275, 283.

**V.**

**CONCLUSION**

The Decedent Cecil Elkins Jr. was fatally shot by Defendant Hipolito Pelayo nine times in the back, while he was running way.   His death has wreaked havoc on his family, but they are determined to see this matter through to final resolution. De. Elkins and Dy. Elkins have been especially harmed as a result of these events.

As a result of the affirmative actions of Mr. Rogoyski, a breakdown in communication has resulted between Plaintiffs' Counsel and De. Elkins and Dy. Elkins Guardian Ad Litem Timothy Bragg, to the point that this office cannot provide legal counsel on the merits on this case and the pros and cons of effecting resolution on the minor plaintiffs' behalf.

To the extent that these *Ex Parte* communications and affirmative actions on the part of Mr. Rogoyski have made him privy to privileged information that could potentially

14

sabotage Plaintiffs' case, Mr. Rogoyski must be removed from this case along with his firm, the Attorney General's Office of the State of California.  In addition, Mr. Rogoyski and the Attorney General's Office of the State of California must be prohibited from sharing any information learned from conversations with Mr. Bragg with newly appointed counsel.

DATED: November 16, 2019                    **LAW OFFICE OF MICHAEL J. CURLS**


By:_____/s/Nichelle D. Jones_____
Nichelle D. Jones, Attorneys for
Plaintiffs

**MOTION TO DISQUALIFY COUNSEL**
**(Elkins v. C.H.P. 1:13-CV-01483-AWI)**