1    XAVIER BECERRA, State Bar No. 118517
     Attorney General of California
2    JEFFREY VINCENT, State Bar No. 161013
     Supervising Deputy Attorney General
3    ROBERT S. J. ROGOYSKI, State Bar No. 302472
     Deputy Attorney General
4      455 Golden Gate Ave.
       Ste. 11000
5      San Francisco, CA 94102
       Telephone: (415) 510-4400
6      Fax: (415) 703-5480
       E-mail: Robert.Rogoyski@doj.ca.gov
7    *Attorneys for Defendant Officer Hipolito Pelayo*

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10                            FRESNO DIVISION

11

12
     **THE ESTATE OF CECIL ELKINS JR. et**        1:13-CV-01483-AWI-SAB
13   **al.,**

14                              Plaintiffs,
                                                  **DEFENDANT'S OPPOSITION TO**
15        v.                                      **MOTION TO DISQUALIFY**
                                                  **DEFENDANT'S COUNSEL**
16
     **OFF. H. PELAYO,**                          Date:        February 24, 2020
17                                                Time:        1:30 PM
                               Defendant.         Dept:        Courtroom 2, 8th Floor
18                                                Judge:       The Honorable Anthony W.
                                                               Ishii
19                                                Trial Date:  Not Set
                                                  Action Filed: 9/12/2013
20

21

22

23

24

25

26

27

28

---

1

**TABLE OF CONTENTS**

2

**Page**

3    Introduction ....................................................................................................................... 1

4    Facts    .............................................................................................................................. 2

            A.    Case Background .................................................................................... 2

5
            B.    Jones And Curls' Representation Of Dennis Elkins Following
6                  Fraud In The Probate Court ........................................................................ 3

7            C.    Attorney Bragg's Investigation Of The Apparent Fraud And
                  Conflicts Of Interest ..................................................................................... 5

8            D.    The Appointment Of Attorney Bragg As Guardian Ad Litem .................. 6

9            E.    Jones And Curls Continue To Provide Legal Representation For
                  Dennis Elkins.................................................................................................. 6

10           F.    Jones And Curls' Disruption of Settlement Negotiations Between
                  Attorney Bragg and Defense Counsel ........................................................ 6

11    Argument ........................................................................................................................... 8

12        I.    Defense Counsel's Communications With Attorney Bragg Were
                Appropriate At All Times .............................................................................. 8

13       II.    Defense Counsel Are Not Subject To A Conflict Of Interest And There Is
                No Basis To Disqualify The Office Of The Attorney General From
14               Representing Defendant........................................................................... 10

15      III.    Jones And Curls' Motion To Disqualify Lacks Factual Support ........................ 12

16      IV.    The Current Situation Exists Because Jones And Curls Are Subject To
                Disqualification And Ethically Obligated To Withdraw From
                Representation Of The Minor Plaintiffs, Yet Have Not Done So........................ 13

17    Conclusion.................................................................................................................... 16

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**CASES**

5
*Elliott v. Versa CIC, L.P.*
   328 F.R.D. 554 (S.D. Cal. 2018) ........................................................................ 9

6
*Gouanillou v. Indus. Acc. Comm'n*
7
   184 Cal. 418 (1920) ........................................................................ 11

8
*Matter of Glenn F.*
   117 A.D.2d 1013 (1986) ........................................................................ 11
9

10
*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*
   760 F.2d 1045 (9th Cir. 1985) ........................................................................ 1, 8

11
*Responsible Citizens v. Superior Court*
12
   16 Cal. App. 4th 1717 (1993) ........................................................................13, 14

13
*Roberts v. City of Palmdale*
   5 Cal. 4th 363 (1993) ........................................................................ 12
14

15
*United Cities Gas Co. v. Brock Expl. Co.*
   995 F. Supp. 1284 (D. Kan. 1998) ........................................................................ 13

16
**STATUTES**

17
42 U.S.C. § 1983 ........................................................................ 2

18
State Bar Act ........................................................................ 15

19
Welfare and Institutions Code
20
   § 317 ........................................................................ *passim*

21
**COURT RULES**

22
Federal Rule 17(c)(2) ........................................................................ 9

23
Local Rule 202(b)(2) ........................................................................10, 11

24
Rule of Professional Conduct
25
   1.7(a) ........................................................................ 15
   1.7(d) ........................................................................ 15
26
   1.7(d)(3) ........................................................................ 15
   1.16 ........................................................................ 15
27
   1.16(b)(7) ........................................................................ 12
   4.2 ........................................................................ 8
28

ii

1

**TABLE OF AUTHORITIES**
(continued)

2

<u>Page</u>

3

**OTHER AUTHORITIES**

4

North Carolina State Bar Opinion. ................................................................................................ 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Opposition To Motion To Disqualify Defendant's Counsel (1:13-CV-01483-AWI-SAB )

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Counsel for the adult plaintiffs in this action, Attorneys Jones and Curls ("Jones and Curls"), have filed a motion to disqualify defendant's counsel and to prevent the Attorney General's Office from continuing to represent the defendant in this action. However, defense counsel's actions were proper at all times, and the motion is gamesmanship intended to block settlement. Motions to disqualify counsel are disfavored and subject to "strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985). Counsel's motion does not meet this high bar and should be denied.

The core of Jones and Curls' motion is their objection to defendant's counsel engaging in direct settlement negotiations with Attorney Timothy Bragg, who is both the Guardian ad litem for the minor plaintiffs Dy. and De. Elkins (the "Minor Plaintiffs" or the "minors") in this action, as well as the minors' state-appointed attorney. Jones and Curls believe they should have been included in the settlement negotiations. But, prior to the settlement negotiations, Jones and Curls undertook legal representation of the Minor Plaintiffs' uncle, Dennis Elkins, who was apparently attempting to defraud the Minor Plaintiffs in probate court. If completed, the fraud would have prevented the minors from inheriting substantial assets, including interests in claims in this federal action. Jones and Curls thereby became subject to a disqualifying conflict of interest because of their joint representation of Dennis Elkins and the Minor Plaintiffs. Under the State's ethics rules, Jones and Curls should have withdrawn from representation of the Minor Plaintiffs, but did not do so.

Attorney Bragg concluded that Jones and Curls could no longer represent the minors in this federal action due to their conflicts of interest, as well as evidence that Jones and Curls were allowing Dennis Elkins to interfere with settlement efforts. Attorney Bragg then told defense counsel that Attorney Bragg would assume the role of attorney for settlement negotiations in this action because he was already the minors' court-appointed attorney under Welfare and Institutions Code § 317. In reliance on Attorney Bragg's representations, defense counsel began

1

1  settlement negotiations with Attorney Bragg directly, and without the participation of Attorneys
2  Jones and Curls.

3  Because Attorney Bragg assumed a dual role of Guardian ad litem and attorney in this
4  action, the communications between Attorney Bragg and defendant's counsel were proper at all
5  times.  Jones and Curls' status as "counsel of record" in this action does not entitle them to
6  participate in settlement negotiations among other counsel, particularly when they are subject to a
7  disqualifying conflict of interest.  Further, Jones and Curls' motion does not provide any evidence
8  demonstrating a conflict of interest on the part of defense counsel.

9  Accordingly, there is no basis to disqualify defendant's counsel or the Office of the
10  Attorney General.  Jones and Curls' Motion should be denied.

11  **FACTS**

12  **A.    Case Background**

13  This lawsuit stems from a fatal confrontation in 2012 between decedent Cecil Elkins, Jr. – a
14  white-supremacist gang member wanted for attempted murder of a police officer – and the last
15  remaining defendant, California Highway Patrol Officer Hipolito Pelayo.  Plaintiffs are estates
16  and family members of Cecil Elkins Jr., and they allege various claims under 42 U.S.C. § 1983
17  and California state law.

18  Plaintiffs report that minors Dy. and De. Elkins ("the minors") were born in June of 2005
19  and December 2006.  Creasha Elkins Dep., ECF 143-9 at 15.  Dy. and De. Elkins are now
20  approximately 14 and 13 years old, respectively.

21  The Minor Plaintiffs' counsel of record in this action are Attorneys Nichelle Jones and
22  Michael Curls.  Attorneys Jones and Curls also represent the claims of the Estate of Cecil Elkins
23  Jr., the minors' biological mother Creasia Elkins, the minors' paternal grandmother Tina Terrel,
24  and the minors' stepsister Valiecia Perez.  Attorneys Jones and Curls also represented the claims
25  of deceased former plaintiff Cecil Elkins Sr., the minors' paternal grandfather, prior to the
26  dismissal of those claims in mid-2019.

27

28

Defendant's Opposition To Motion To Disqualify Defendant's Counsel (1:13-CV-01483-AWI-SAB )



The above image depicts the alleged relationships between Dy. and De. Elkins and the other plaintiffs and former plaintiffs in this matter:  Cecil Elkins Jr. (deceased father, estate plaintiff), Cecil Elkins Sr. (deceased grandfather, former guardian ad litem, former plaintiff), Tina Terrel (plaintiff, surviving grandmother), Creasha Elkins (plaintiff, surviving non-custodial parent), Dennis Elkins (former putative plaintiff; uncle, and former guardian ad litem of Dy. and De. Elkins), and Valiecia Perez (plaintiff, stepsister of Dy. and De. Elkins, daughter of Creasha Elkins).

Defendant disputes the allegation that Dy. and De. Elkins are the natural-born children of Cecil Elkins, Jr.  *See, e.g.*, ECF 143 at 6-7.  Defendant reserves all rights in this regard, and only includes the graphic representation of plaintiff's allegations for the benefit of the Court.

**B.    Jones And Curls' Representation Of Dennis Elkins Following Fraud In The Probate Court**

At the outset of this federal action, Plaintiffs filed petitions for plaintiff Creasha Elkins, the minors' mother, to serve as their guardian ad litem.  ECF 6-8.  Those petitions were never approved.

Defendant's Opposition To Motion To Disqualify Defendant's Counsel (1:13-CV-01483-AWI-SAB )

1    Following an incident involving violence, unlawful firearms, and drugs in the minors'

2    home, the minors were removed from their mother's custody and placed in the state foster care

3    system in 2015.  *See* ECF 109 at 5-6.  Attorney Timothy Bragg was subsequently appointed by a

4    California state court to serve as the Minor Plaintiffs' attorney in state court juvenile dependency

5    proceedings.  ECF 191 at 3 ¶ 5; ECF 192 at 3 ¶ 5.

6    Under California law, Attorney Bragg has a statutory duty not only to represent the minors

7    as legal counsel in the juvenile court proceedings to which he was appointed, but also to protect

8    their legal interests beyond the juvenile court proceedings.  Section 317 of the California Welfare

9    and Institutions Code ("WIC") states that a juvenile's appointed counsel "shall investigate the

10   interests of the child *beyond the scope of the juvenile proceeding*, and report to the court other

11   interests of the child that may need to be protected by the institution of other administrative or

12   judicial proceedings."  WIC § 317(e)(3) (emphasis added).  The same section further states that

13   "Counsel shall be charged *in general* with the representation of the child's interests.  To that end,

14   counsel shall make or cause to have made any further investigations that he or she deems in good

15   faith to be reasonably necessary. . . ."  WIC § 317(e)(1) (emphasis added).  "A primary

16   responsibility of counsel appointed to represent a child . . . pursuant to this section shall be to

17   advocate for the protection, safety, and physical and emotional well-being of the child. . . ."  WIC

18   § 317(c)(2).

19   Starting in June of 2016, plaintiffs filed successive petitions to appoint plaintiff Cecil Elkins

20   Sr., the minors' paternal grandfather, as their Guardian ad litem in this action.  ECF 114, 115,

21   118, 119.  The Court granted the requests on June 28, 2016.  ECF 121.  Cecil Elkins Sr. passed

22   away in November of 2018, leaving a sizeable estate estimated at $336,700.  ECF 167 at 6, 25.

23   In January of 2019, the Minor Plaintiffs' uncle Dennis Elkins filed a petition for probate in

24   Tulare Superior Court.  As explained in detail in ECF 178, the petition for probate contained an

25   express and apparently fraudulent, sworn statement by Dennis Elkins that Cecil Elkins Sr. had no

26   grandchildren.  ECF 167 at 26-27; ECF 178 at 10-12.  As a result, the minors did not receive

27   notice of their large inheritance which, absent Attorney Bragg's intervention, would have passed

28   solely to Dennis Elkins personally.  *See id.* at 10-15.  Further, the apparent fraud would prevent

4

1    the minors from inheriting a portion of an eventual judgment or settlement in this federal action in

2    favor of Cecil Elkins Sr.'s Estate, because the minor plaintiffs also inherit financial interests in

3    their grandfather's claims in this action.  Rogoyski Declaration ("RD") Exh. B at 4 ¶ 11.

4    Unaware of the apparent fraud, on March 6, 2019, the Tulare County Superior Court held a

5    probate hearing and issued an Order naming Dennis Elkins as executor of Cecil Elkins Sr.'s

6    estate.  *See* ECF 167 at 42.

7           Based on actions undertaken by Jones and Curls, they began legally representing Dennis

8    Elkins in this federal action around March of 2019.  On March 11, 2019, Jones and Curls filed a

9    Motion to Substitute Dennis Elkins as representative of the claims of deceased plaintiff Cecil

10   Elkins Sr., in Dennis Elkins' capacity as Executor of the estate.  ECF 167 at 2.  On March 12,

11   2019, Jones and Curls filed "proposed orders" to appoint Dennis Elkins as guardian ad litem for

12   Dy. and De. Elkins.  ECF 169, 170.

13          On March 13, 2019, the Court granted the proposed orders without providing defendant an

14   opportunity to oppose them.  ECF 171, 172.  On March 29, defendant filed a motion for

15   reconsideration of the Orders naming Dennis Elkins as the Minors' Guardian ad litem, as well as

16   an opposition to the pending motion to substitute Dennis Elkins as plaintiff.  ECF 177, 178.

17   Defendant's motions proved-up Dennis Elkins' apparent fraud in extensive detail.  *E.g.*, ECF 178

18   at 10-17.

19          On April 22, 2019, Jones and Curls filed a non-opposition statement on behalf of Dennis

20   Elkins stating that Dennis Elkins did not oppose defendant's motion to disqualify him from

21   serving as the Minor Plaintiff's Guardian ad litem.  ECF 183.  On April 29, Jones and Curls filed

22   a notice of withdrawal of the motion to substitute Dennis Elkins as a plaintiff.  ECF 185.

23          On May 3, 2019, the Court denied the motion to substitute as withdrawn and granted

24   motion to disqualify Dennis Elkins.  ECF 186 at 1-2.

25          **C.      Attorney Bragg's Investigation Of The Apparent Fraud And Conflicts Of
                      Interest**

26

27          Following the revelation of the apparent fraud in the Probate Court, Attorney Bragg

28   conducted an investigation on behalf of the Minor Plaintiffs and filed a motion to appoint a

Guardian ad litem for the Minor Plaintiffs in the probate matter in order to protect their interests and inheritance from Dennis Elkins.  *See* ECF 188 ¶ 2; RD Exh. B at 3-5, ¶¶ 9-14.  Attorney Bragg's investigation included an examination of potential conflicts of interest and raised the issue of whether the Minor Plaintiffs should "seek their own counsel separate from the counsel representing the Elkins's family."  RD. Exh. B at 5 ¶ 12.

Attorney Bragg's investigation revealed a separate issue with Dennis Elkins and Attorneys Jones and Curls.  Specifically, in a sworn state court declaration Attorney Bragg averred:

> I have learned from both Ms. Jones and Mr. Ro[]goyski that the defendants in the federal wrongful death action have offered to settle the litigation.  It appears taking the settlement may be in the Minors' best interests, but Ms. Jones said the paternal uncle . . . is unwilling to settle the litigation on their behalf at this time.  This potentially creates a conflict of interest between the paternal uncle and the Minors.

*Id*. at 4-5 ¶ 11.  This statement shows that Jones and Curls were already representing the legal and financial interests of Dennis Elkins personally in an eventual judgment or settlement of this federal action – to the detriment of the Minor Plaintiffs.

**D.    The Appointment Of Attorney Bragg As Guardian Ad Litem**

Following the disqualification of Dennis Elkins, on June 5, 2019, Jones and Curls filed petitions to appoint Attorney Bragg as the Minor Plaintiffs' Guardian ad litem in this action.  *See* ECF 191, 192.  The petitions were granted on June 7, 2019.  ECF 193.

**E.    Jones and Curls Continue To Provide Legal Representation For Dennis Elkins**

Meanwhile, Jones and Curls continued their representation of Dennis Elkins' interests by coordinating the dismissal of claims that Dennis Elkins represented as Executor between this Federal Court and State Probate Court.  ECF 188 ¶¶ 5-6.  Jones and Curls also responded on behalf of Dennis Elkins to Attorney Bragg's investigation of the apparent fraud, explaining that Dennis Elkins would not object to a replacement Guardian ad litem.  RD Ex. B at 3-4 ¶ 9.

As late as September of 2019, Attorney Jones continued to make representations on behalf of Dennis Elkins as Executor and representative of the Estate of Cecil Elkins Sr. regarding the settlement and dismissal of the Estate's claims in this action.  RD ¶ 26 & Exh. D at 1-2.

6

1
2

**F.    Jones And Curls' Disruption of Settlement Negotiations Between Attorney Bragg And Defense Counsel**

3       After Attorney Bragg was appointed Guardian ad litem for the Minor Plaintiffs, Attorney

4   Bragg informed defense counsel that he believed Jones and Curls' were subject to disqualifying

5   conflicts of interest.  RD ¶ 4.  However, rather than hire replacement counsel Attorney Bragg told

6   defense counsel he would assume the role of attorney in this action.  *Id.* ¶¶ 4-5.  Given his

7   extensive experience with issues affecting juveniles, his statutory duty under WIC § 317, and his

8   dual role as the minors' attorney and Guardian ad litem, Attorney Bragg did not believe hiring

9   replacement counsel was necessary.  *Id.* ¶ 5.

10       Based on those representations, defense counsel began settlement negotiations with

11   Attorney Bragg.  *Id.* ¶¶ 6-8.  Attorney Bragg then informed Jones and Curls of the settlement

12   negotiations.  *Id.* ¶ 7; ECF 203-1 ¶¶ 26-27.  But, Jones and Curls objected to the settlement

13   negotiations because they believed that a settlement should cover their litigation costs and

14   attorney's fees, and that they were entitled to 40% of any settlement proceeds.  RD ¶ 7.  Jones and

15   Curls threatened to put a lien on any settlement that did not meet their financial demands.  *Id.*

16       In August of 2019, defense counsel and Attorney Bragg reached a settlement "in principle"

17   of the minors' claims, though the details were not finalized.  *Id.* ¶ 11.  The settlement could not be

18   finalized at that time because Attorney Bragg wanted additional time to communicate with Jones

19   and Curls regarding their financial objections to settlement.  *Id.* ¶¶ 11-12.

20       On September 16, 2019, defense counsel notified the Court that defense counsel and

21   Attorney Bragg had reached a settlement "in principle" of the minors' claims.  *Id.* ¶ 13.  Jones

22   and Curls then "objected that they were unaware of any settlement efforts with their minor

23   clients."  ECF 200 (docket text); RD ¶ 13.  The Court directed the parties to meet and confer.

24       The parties elected to remain on the teleconference line to meet and confer.  *Id.* ¶ 14.

25   During the meet and confer call, Attorney Curls made several threats against both defense counsel

26   and Attorney Bragg.  *Id.*; Lafleur Declaration ("LFD") ¶ 3.  In particular, Attorney Curls

27   threatened to file an ethics complaint with the State Bar against the undersigned and Attorney

28   Bragg for engaging in settlement negotiations without Jones and Curls and for "usurping" their

7

1    control of the litigation.  RD ¶ 14; LFD ¶ 3.  Attorney Curls further threatened to file a State Bar

2    complaint against Attorney Bragg for allegedly inadequate investigation of the Minor Plaintiffs'

3    interests because Attorney Bragg did not conduct "discovery" of Jones and Curls' litigation costs

4    and fees.  *Id.*  Attorney Curls also threatened to file a lien on any settlement that did not

5    "compensate" Jones and Curls financially for their "six years of investment in this litigation."  *Id.*

6         The apparent purpose of these threats was to block settlement of the minors' claims, and

7    they effectively ended the negotiations.  RD ¶¶ 15-19; *see* RD Exh. C at 1.

8                                        **ARGUMENT**

9    **I.    DEFENSE COUNSEL'S COMMUNICATIONS WITH ATTORNEY BRAGG WERE
             APPROPRIATE AT ALL TIMES**

10

11        When viewed in light of the facts, Jones and Curls' motion to disqualify defense counsel

12   amounts to gamesmanship with a financial motive.  "Because of [the] potential for abuse,

13   disqualification motions should be subjected to '"particularly strict judicial scrutiny."'  *Optyl*

14   *Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985).

15   Jones and Curls' Motion withers under this scrutiny.

16        The Motion cites Rule of Professional Conduct 4.2, which generally prohibits attorney

17   communications with a represented person regarding the subject of the representation without

18   their attorney's consent.  This general rule, however, is not applicable or apposite here because

19   Attorney Bragg *is the minors counsel* in this matter for settlement purposes.  Prior to being

20   appointed guardian, Attorney Bragg was already the minors' state-appointed attorney.  Due to

21   Jones and Curls' severe conflicts of interest, Attorney Bragg told defense counsel that Attorney

22   Bragg would handle settlement negotiations himself, thereby assuming the role of counsel in this

23   action.  RD ¶ 4-5.  In good faith reliance on that representation, defense counsel began settlement

24   negotiations with Attorney Bragg.  *Id.* ¶ 6.  Accordingly, substantive direct communications

25   between Attorney Bragg and defense counsel were appropriate because Rule 4.2 was not violated.

26        Moreover, Rule 4.2 does not require that an opposing lawyer get permission from a

27   represented person's entire legal team.  In the comments addressing situations where the general

28

                                            8

1  rule does not apply, Comment 6 to Rule 4.2 explains that where "a current constituent of the

2  organization is represented in the matter by his or her own counsel, the consent by that counsel to

3  a communication is sufficient for purposes of this rule."  Although, the Rule does not address

4  dual-role guardian-attorney representation specifically, the clear purpose of Comment 6 is to

5  make room for situations where a person may have their own counsel, separate from other

6  counsel representing a group.  That is the case here.

7         Jones and Curls' Motion suggests that Attorney Bragg cannot act as the minors' attorney in

8  this action because "he was not retained as 'Attorney ad litem.'"  ECF 203 at 8-9.  The case that

9  Jones and Curls cite for this proposition, however, is misquoted and inapplicable.  *Elliott v. Versa*

10  *CIC, L.P.*, 328 F.R.D. 554, 556 (S.D. Cal. 2018), addressed a dispute over whether a Federal Rule

11  17(c)(2) guardianship appointment remained valid after discovery that the guardian also had a

12  defective power of attorney form making the guardian a "general representative."  *Id*. at 555-556.

13  *Versa* has no relevance to this case.  Moreover, no Order of this Court purported to block

14  Attorney Bragg's obligations to the minors as their attorney under WIC § 317.

15         Jones and Curls' Motion admits that they have "no case on point in the Ninth Circuit"

16  addressing similar facts, but contend that the Court should follow a North Carolina State Bar

17  Opinion.  ECF 203 at 12, 14-16.  This authority is not controlling in this State, and it is also not

18  persuasive for two reasons.  *First*, that Opinion does not address the situation here:  where the

19  minors' Guardian ad litem is also their state-appointed attorney, has a statutory duty to represent

20  their interests outside of state court proceedings, has made a representation to defense counsel

21  that the Guardian will also act as an attorney for settlement negotiations, and the minors' other

22  counsel are clearly subject to a disqualifying conflict of interest.  The difference in these critical

23  facts makes the North Carolina Opinion distinguishable and unhelpful.

24         *Second*, the District of Columbia Bar has addressed a more comparable situation where a

25  guardian is also a state-appointed attorney charged *in general* with "representation of the child's

26  best interest" under statutes somewhat similar to California's WIC § 317.  *See generally* RD Exh.

27  A.  That Opinion concluded that such a guardian has a dual role and "is the child's lawyer" with

28

1   the attendant rights and obligations for both roles.  *Id*. at 1-2.  This contrary authority shows that

2   the North Carolina Opinion is not definitive and cannot be extended to cover diverse facts.

3       Taking a step back, there is no specter of impropriety here.  Attorney Bragg and defense

4   counsel's motivation for excluding Jones and Curls from the settlement negotiations is critical:

5   Jones and Curls are acting as attorneys for Dennis Elkins in this action and have allowed Dennis

6   Elkins to interfere with settlement of the Minors' claims.  They are subject to disqualification.

7   Moreover, the instant motion to disqualify appears to be gamesmanship focused on Jones and

8   Curls' own pecuniary interests.  RD ¶¶ 7-15; LFD ¶ 3.  Further, defense counsel should be

9   permitted to rely on Attorney Bragg's representation that he would handle settlement of the

10   minors' claims as their attorney.

11       Attorney Bragg has three overlapping sets of obligations to the minors:  (1) his obligation to

12   represent their interests as their state-appointed counsel for juvenile dependency proceedings; (2)

13   his obligation to represent their interests in this action as their Guardian ad litem; and (3) his

14   obligation to represent, investigate, and protect their interests generally pursuant to WIC § 317.

15   This confluence of roles made Attorney Bragg an appropriate attorney for settlement negotiations

16   with defense counsel.  Indeed, Attorney Bragg was ideally suited for the task given his history

17   with the minors.

18       Accordingly, Jones and Curls' motion to disqualify does not meet "strict judicial scrutiny"

19   and should be denied.

20   **II.**    **DEFENSE COUNSEL ARE NOT SUBJECT TO A CONFLICT OF INTEREST AND THERE
21**       **IS NO BASIS TO DISQUALIFY THE OFFICE OF THE ATTORNEY GENERAL FROM
REPRESENTING DEFENDANT**

22       Section C(2) of Jones and Curls' Motion lists actions allegedly taken by defense counsel to

23   "essentially become a legal advocate" for the minors and Attorney Bragg.  ECF 203 at 12-13.

24   This vague list lacks proper factual substantiation and specific instances of conduct, making it

25   difficult to address.  The contention should be rejected for this reason alone.

26       To the extent that the allegations in that section can be addressed, they appear to confuse

27   defense counsel's role as an advocate for defendant with actions that incidentally benefit other

28   persons.  For example, the Motion states defense counsel intend "to file a motion for approval of

10

1    minors' compromise on Mr. Bragg's and the minors' behalf." ECF 203 at 12.  But if a settlement

2    of the minors' claims were reached, filing a motion for approval would be obligatory under Local

3    Rule 202(b)(2).  *See also* RD ¶ 23.  Defense counsel would prepare such a motion on *defendant's*

4    *behalf*, though doing so could incidentally benefit the minors and Attorney Bragg.  *See id.*

5    Cooperation to complete a settlement obviously does not create a conflict of interest.

6         Similarly, the Motion suggests that defense counsel have "conducted research" on behalf of

7    an unnamed third party.  ECF 203 at 12.  This appears to refer to a meet-and-confer call where the

8    undersigned defense counsel claimed to have case cites supporting his contentions, and then later

9    circulated the cases.  RD ¶¶ 23, 25; *see* ECF 203-1 ¶ 33.  Sharing cited legal authority in this

10   manner does not plausibly create a conflict of interest.  It is a routine part of legal advocacy.

11        The ultimate issue here is the integrity of these proceedings going forward and the

12   enforceability of a potential settlement.  In particular, defendant now faces a severe risk that any

13   actions taken by Jones and Curls on behalf of the minor plaintiffs would be subject to a future

14   legal attack on the grounds that their representation was inadequate.  "The right of a minor to

15   disaffirm an adjudication of his rights by a judicial tribunal obtained in a proceeding in which he

16   has not been duly represented as provided by law continues until barred by laches after the minor

17   has attained the age of majority; the right is not dependent upon statute, but is a general rule of

18   law enforced as a necessary incident to the status of minority."  *Gouanillou v. Indus. Acc.*

19   *Comm'n*, 184 Cal. 418, 420 (1920); *see, e.g.*, *Matter of Glenn F.*, 117 A.D.2d 1013, 1014 (1986)

20   (minors entitled to new trial where lower court failed to adequately inquire into potential conflicts

21   of interest and informed consent in joint representation).

22        Jones and Curls are *still* representing the interests of the Minor Plaintiffs' uncle who was

23   apparently attempting to defraud them, and who *did not oppose* a motion to disqualify him based

24   on the evidence of fraud.  Since Attorney Bragg was appointed the minor plaintiffs' Guardian ad

25   litem, Jones and Curls have successfully blocked settlement negotiations involving the minors'

26   claims because the proposed settlement did not "compensate" them financially for "six years of

27   investment in this litigation."  RD ¶¶ 14-18 & Exh. C; LFD ¶ 3.  Further evidence of Jones and

28   Curls' conflicts of interest is their current motion to disqualify the minors' Guardian ad litem

Defendant's Opposition To Motion To Disqualify Defendant's Counsel (1:13-CV-01483-AWI-SAB )

1   who, as the minor's state appointed attorney, has a statutory duty to protect the minors' interests

2   in forums outside of the juvenile courts.

3       Jones and Curls' failure to withdraw and continued attempts to block settlement with the

4   minors is harmful to the minors' best interests.  Defense counsel negotiated a settlement on behalf

5   of defendant, in good faith, with Attorney Bragg who represented the Minor Plaintiffs and

6   advocated for their best interests on their behalf.

7       Accordingly, no conflict of interest exists for defense counsel.  In turn, the request to

8   impute such a conflict to the Office of the Attorney General must be denied as well.

9   **III.   JONES AND CURLS' MOTION TO DISQUALIFY LACKS FACTUAL SUPPORT**

10      Jones and Curls' Motion makes numerous allegations of perceived harm to their interests as

11  "counsel of record" in this action.  However, when examined, the allegations are entirely

12  unsupported by competent evidence and misguided under the law.

13      The motion contends that Jones and Curls "cannot share litigation strategy or case details

14  [with Attorney Bragg] for fear of the information being disseminated to the defense."  ECF 203 at

15  10:2-3.  But there is no evidence in the motion or supporting papers of any improper disclosures

16  of privileged communications or sensitive factual information by Attorney Bragg to defense

17  counsel.  This "fear" instead appears to be Jones and Curls' supposition about hypothetical future

18  harms to their pecuniary interest in controlling this litigation.

19      Moreover, this "fear" is misguided.  "Under the Evidence Code, a client holds a privilege to

20  prevent the disclosure of confidential communications between client and lawyer."  *Roberts v.*

21  *City of Palmdale*, 5 Cal. 4th 363, 371 (1993) (emphasis added).  Here, privilege is owned by the

22  minor plaintiffs, and its exercise is ultimately decided by their Guardian ad litem, Attorney Bragg.

23  Attorney Bragg also has the power to hire and fire counsel.  Thus, Jones and Curls cannot object

24  that Attorney Bragg might decide during settlement negotiations to exercise powers granted to

25  him by appointment and by statue.  Instead, because the relationship with Attorney Bragg has

26  deteriorated, Rule of Professional Conduct 1.16(b)(7) indicates Jones and Curls should withdraw.

27      Similarly, the Motion states "to the extent that Mr. Bragg has shared information about the

28  family dynamics of the Elkins' family, Plaintiffs are prejudiced by these *Ex Parte*

Defendant's Opposition To Motion To Disqualify Defendant's Counsel (1:13-CV-01483-AWI-SAB )

1   communications."  ECF 203 at 10.  A simple review of the Motion reveals a complete failure by

2   Jones and Curls to explain what the vague term "family dynamics" means and, more importantly,

3   fails to provide any competent evidence whatsoever that disclosures have occurred.  These

4   statements are allegations without substance.

5          For these reasons as well the motion should be denied.

6   **IV.    THE CURRENT SITUATION EXISTS BECAUSE JONES AND CURLS ARE SUBJECT TO**
        **DISQUALIFICATION AND ETHICALLY OBLIGATED TO WITHDRAW FROM**
7       **REPRESENTATION OF THE MINOR PLAINTIFFS, YET HAVE NOT DONE SO**

8          Jones and Curls' disqualification motion seeks a form of equitable relief.  But they do not

9   bring the motion with clean hands.  "[O]ne who seeks equity must do so with clean hands.

10  *United Cities Gas Co. v. Brock Expl. Co.*, 995 F. Supp. 1284, 1296 (D. Kan. 1998).  "This maxim

11  is designed to prevent a litigant from obtaining affirmative relief in equity with respect to

12  transactions in which it has been guilty of inequitable conduct."  *Id*.  Jones and Curls' Motion

13  ignores a critical issue:  their conflicts of interest with the minors based on representation of

14  Dennis Elkins.  Jones and Curls contend that defense counsel "has placed [Jones and Curls] in an

15  adversarial position with the minor's Guardian Ad Litem, [and they] are unable to provide

16  effective legal counsel to De. Elkins and Dy. Elkins via their Guardian Ad Litem."  ECF 203 at 9.

17  But the Motion ignores the reality that the "adversarial position" and representation problem in

18  this action exists because Jones and Curls are ethically obligated to withdraw from representation

19  of the Minor Plaintiffs and have not done so.

20         Dennis Elkins' apparent fraud in the probate court is set out in detail in prior motions.  In

21  brief, Dennis Elkins made a false, sworn statement that the minors did not exist, and did not

22  provide them with notice of the probate proceedings.  ECF 178 at 10-12.  This fraud would have

23  caused Cecil Elkins Sr.'s sizeable estate – including his prior claims in this action – to pass solely

24  to Dennis Elkins.  *Id*. at 12-15.  Absent Attorney Bragg's intervention in the probate proceedings,

25  the minor plaintiffs would have been deprived of their inheritance entirely.

26         By at least March of 2019, Jones and Curls became attorneys-in-fact for Dennis Elkins by

27  implied contract.  "Except for those situations where an attorney is appointed by the court, the

28  attorney-client relationship is created by some form of contract, express or implied, formal or

13

1   informal. . . .  An implied contract is one, the existence and terms of which are manifested by

2   conduct."  *Responsible Citizens v. Superior Court*, 16 Cal. App. 4th 1717, 1732 (1993).

3          As explained above, Jones and Curls undertook legal representation of Dennis Elkins by

4   filing motions on his behalf to allow him to join this litigation as a plaintiff-representative of

5   Cecil Elkins Sr.'s estate, and to act as Guardian ad litem for the Minor Plaintiffs.  *See* ECF 167 at

6   2, ECF 169-170.  After the apparent fraud on the minors was revealed, Jones and Curls continued

7   to file motions on behalf of Dennis Elkins, helping him to withdraw from this action and to

8   coordinate the dismissal of Cecil Elkins Sr.'s claims that he controlled as Executor of the Estate.

9   *See* ECF 183, 185, 199; RD. ¶ 26 & Exh. D at 1-2.  Jones and Curls negotiated the settlement of

10  the claims the Estate of Cecil Elkin Sr. in exchange for a waiver of costs – claims Dennis Elkins

11  represented as Executor and stood to inherit via probate.  RD Exh. D at 1-2.  Jones and Curls have

12  continued to advocate for Dennis Elkins' defense in the instant motions by arguing that the

13  apparent fraudulent attempt to disinherit the minors was "no more than a miscommunication."

14  *See, e.g.*, ECF 203-1 ¶ 22.

15         Jones and Curls' own Motions also demonstrate communications between Dennis Elkins,

16  Jones, and Curls, involving sharing of confidential information regarding both the apparent fraud

17  and settlement issues.  *See, e.g.*, *id*. at ¶ 21 ("I was aware of Dennis Elkins' desire to continue to

18  the momentum set by his father to ensure that the minor Plaintiffs were taken care of in this

19  litigation."), ¶ 22 ("When I informed Dennis Elkins of Mr. Rogoyski's allegations concerning the

20  probate proceedings, he immediately contacted their Probate Attorney.").  Likewise,

21  communications between Attorney Jones and Attorney Bragg revealed that Attorney Jones had

22  allowed Dennis Elkins to participate in settlement strategy and to impede settlement of the

23  minors' claims.  RD Exh. B 4 ¶ 11 ("Ms. Jones said the paternal uncle . . . is unwilling to settle

24  the litigation on [the minors'] behalf at this time.").

25         "A per se or automatic disqualification rule applies when counsel's representation of one

26  client is adverse to the interests of another *current* client."  *Responsible Citizens v. Superior*

27  *Court*, 16 Cal. App. 4th 1717, 1724 (1993) (emphasis added).  By undertaking representation of

28  Dennis Elkins in this action – particularly given Dennis Elkins' control of inheritable legal claims

14

1    as Executor of the Estate of Cecil Elkins Sr. – Jones and Curls became adverse to the minor

2    plaintiffs.  The statutes of limitations on state law claims that the Minor Plaintiffs could bring

3    against Dennis Elkins, or Jones and Curls directly for fraud, negligence, waste, malpractice, or

4    breach of fiduciary duty have not run.  And, under Rule of Professional Conduct 1.7(d)(3), the

5    conflicts created by these potential claims are unwaivable.  Jones and Curls, thus, became subject

6    to the per se disqualification rule.

7        The reciprocal of the disqualification rule is provided in State Bar Rules of Professional

8    Conduct.  Rule 1.7(a) states:  "A lawyer shall not, without informed written consent from each

9    client and compliance with paragraph (d), represent a client if the representation is directly

10    adverse to another client in the same or a separate matter."  Rule 1.7(d) clarifies that informed

11    consent cannot permit representation that "involve[s] the assertion of a claim by one client against

12    another client represented by the lawyer in the same litigation or other proceeding before a

13    tribunal" – which is the situation here given the Minor Plaintiffs' potential claims against Dennis

14    Elkins, Jones, and Curls, for fraud, negligence, waste, malpractice, and breach of fiduciary duty.

15    *See* ECF 178 at 17-21; *see also* RD Ex B at 5 ¶ 12 (noting the potential to bring state law claims

16    on behalf of the minors).  Rule 1.16 states that "a lawyer shall not represent a client or, where

17    representation has commenced, shall withdraw from the representation of a client if: . . . (2) the

18    lawyer knows or reasonably should know that the representation will result in violation of these

19    rules or of the State Bar Act."

20        In short, Jones and Curls were obligated to withdraw from representation of the minors

21    after the apparent fraud was revealed.  And, separately, they should have withdrawn for allowing

22    Dennis Elkins to participate in, and interfere with, settlement strategy involving the Minor

23    Plaintiffs' claims in this action.  Instead, they filed the instant motions to disqualify the party and

24    party opponent who have raised the conflicts issues in an attempt to deflect attention from their

25    own unclean hands.  This is pure gamesmanship and should be rejected by the Court.

26        Jones and Curls attempt to cast their exclusion from settlement negotiations as defense

27    counsel's wrongdoing.  Not so.  Before Attorney Bragg became the minor's Guardian ad litem, he

28    had already raised the issue of Jones and Curls' conflicts of interest in state court.  RD Exh. B at 5

¶¶ 11-13.  Defense counsel did not create Jones and Curls' problems with Attorney Bragg or their conflicts of interest.  They brought it upon themselves by undertaking representation of Dennis Elkins, and by failing to abide by their ethical obligations to withdraw from their representation of the Minor Plaintiffs.

Given the facts, it is implausible that Jones and Curls can fulfill their fiduciary duty of loyalty to the minor plaintiffs, negotiate an enforceable settlement on their behalf, or credibly claim to pursue the minors' litigation interests.  This state of affairs led Attorney Bragg to assume the role of settlement counsel, and for Attorney Bragg and defense counsel to attempt settlement negotiations without Jones and Curls.

The Court should not permit Jones and Curls to erase their failure to withdraw and conflicts of interest by filing motions to disqualify defense counsel and Attorney Bragg instead.  They do not seek this equitable relief with clean hands.  Accordingly, the Motion should be denied.

## CONCLUSION

For the reasons stated above, defendant requests that the Motion to Disqualify defense counsel be denied.


Dated:  January 14, 2020                               Respectfully Submitted,

                                                       XAVIER BECERRA
                                                       Attorney General of California
                                                       JEFFREY VINCENT
                                                       Supervising Deputy Attorney General


                                                       */s/ Robert S.J. Rogoyski*
                                                       ROBERT S. J. ROGOYSKI
                                                       Deputy Attorney General
                                                       *Attorneys for Defendant*
                                                       *Hipolito Pelayo*

SA2013310653
21767582.docx

16

Defendant's Opposition To Motion To Disqualify Defendant's Counsel (1:13-CV-01483-AWI-SAB )