UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF CECIL ELKINS, JR., et al., <br><br> Plaintiffs <br><br> v. <br><br> OFFICER HIPOLITO PELAYO., <br><br> Defendant | CASE NO. 1:13-CV-1483 AWI SAB <br><br> ORDER ON DEFENDANT'S MOTION TO DISMISS <br><br> (Doc. No. 209) |

This case stems from a fatal confrontation between decedent Cecil Elkins, Jr. ("Elkins") and the last remaining defendant, California Highway Patrol Officer Hipolito Pelayo ("Pelayo"). Plaintiffs are the estate and family members of Elkins, and they allege various claims under 42 U.S.C. § 1983 and California state law. Currently before the Court is Pelayo's Rule 12(h)(3) motion to dismiss the second, third, fourth, and fifth causes of action by Plaintiff Creasha Elkins ("Creasha"). For the reasons that follow, the motion will be denied.

## BACKGROUND

On November 13, 2012, Elkins was shot and killed by Pelayo during the course of Pelayo's law enforcement duties. This civil rights lawsuit ensued. The active plaintiffs in this suit are the estate of Elkins, Creasha (Elkins's widow), Devin Elkins ("Devin") (a minor son of Elkins), Dylan Elkins ("Dylan") (a minor son of Elkins), and Valiecia Perez (a step-daughter of Elkins). Creasha is pursuing both individual claims and claims as the successor in interest to Elkins pursuant to California Code of Civil Procedure § 377.30.[1]  See Doc. No. 72. Specifically, Creasha is pursuing the following claims as the successor in interest: (1) assault (second cause of

---

[1] Unless otherwise noted, all further statutory references are to the California Code of Civil Procedure.

action); (2) battery (third cause of action); (3) Cal. Civil Code § 52.1 (Bane Act) (fourth cause of action); and (4) 42 U.S.C. § 1983 Fourth Amendment violations.  Id.  Dylan and Devin are pursuing 42 U.S.C. § 1983 for violation of their Fourteenth Amendment rights and wrongful death pursuant to § 377.60.  Id.

On December 10, 2014, Creasha filed a Declaration of Successor in Interest."  Doc. No. 59.  In relevant part, Creasha declared that no proceeding for the administration of Elkins's estate was pending, she was the wife of Elkins, she is the mother of Devin and Dylan, Devin and Dylan are Elkins's children, and that she, Dylan, and Devin are Elkins's "successor in interest as defined in [Cal. Code Civ. P.] § 377.11."  Id.  The declaration avers that Creasha, Dylan, and Devin all succeed to Elkins's interest in this action and that "[n]o other person has a superior right to be substituted for the decedent in the pending action."  Id.

## **RULE 12(h)(3) FRAMEWORK**

Federal Rules of Civil Procedure 12(b)(1) allows for a motion to dismiss based on lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  While Rule 12(b) motions generally must be made before the moving party files a responsive pleading, Rule 12(h)(3) eliminates this deadline.  See Wood v. City of San Diego, 678 F.3d 1075, 1082 (9th Cir. 2012); see also Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 880 n.3 (3d Cir. 1992).  Rule 12(h)(3) provides that, "[i]f the court determines that it lacks subject matter-jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Thus, a lack of subject matter jurisdiction may be raised by a court or by a party at any stage of the litigation.  Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006); Wood, 678 F.3d at 1082.  The same standards that govern a Rule 12(b)(1) motion apply to a Rule 12(h)(3) motion.  See Hamidi v. SEIU Local 1000, 386 F.Supp.3d 1289, 1294 (E.D. Cal. 2019); Anson v. United States, 294 F.Supp.3d 144, 156 (W.D. N.Y. 2018); Gates v. Black Hills Health Care Sys., 997 F.Supp.2d 1024, 1029 (D. S.D. 2014).  Motions that challenge a party's Article III standing may be made at any time through a Rule 12(b)(1)/Rule 12(h)(3) motion to dismiss.  In re Apple iPhone Antitrust Litig., 846 F.3d 313, 319 (9th Cir. 2017).

# DEFENDANT'S MOTION

*Defendant's Argument*

Pelayo argues that, as relevant to this case, § 377.11 defines a "successor in interest" as "the beneficiary of the decedent's estate." Section § 377.10 in turn defines "beneficiary" for an intestate decedent as the sole person or all of the persons who succeed to a cause of action under Probate Code § 6401 and § 6402 when the decedent died intestate. Because Creasha's declaration indicates that Elkins died intestate, operation of Probate Code § 6401 and § 6402 mean that Creasha, Dylan, and Devin are beneficiaries and the second, third, fourth, and fifth causes of action are owned by the three of them. Section 377.10 as applied to this case requires that all three of these plaintiffs act together and assert the second through fifth survival claims as "successors in interest." That is, since Creasha, Dylan, and Devin may only jointly pursue these four causes of action as "successors in interest;" it is improper for less than all three of the plaintiffs to pursue the survival claims. Because only Creasha brings the second through fifth causes of action as a successor in interest, she lacks standing to pursue those claims. Therefore, dismissal of the second, third, fourth, and fifth causes of action is appropriate.

In reply, Pelayo argues that there is no waiver because Rule 12(h)(3) motions can be brought at any time. Further, Pelayo argues that he has not raised the § 377.10 argument regarding Creasha's standing before, so it was not litigated during the pre-answer motions and it was not part of the issues identified that made the Third Amended Complaint objectionable. Pelayo also emphasizes that Plaintiffs do not address the actual language of § 377.10 or how that provision applies in this case.

*Plaintiff's Opposition*

Plaintiffs' opposition is unclear and somewhat confusing. However, Plaintiffs appear to argue that this motion is untimely. Pelayo did not raise any standing issues regarding Creasha as part of the summary judgment motion and, although some standing arguments were made during 12(b)(6) motions, Pelayo did not make his standing arguments prior to answering the Fourth Amended Complaint. In fact, Pelayo stipulated that the Fourth Amended Complaint cured any deficiencies from the Third Amended Complaint. This implicates the waiver provisions of Rule

1  12(h)(1).  Also, in a findings and recommendation that was adopted by the Court, the Magistrate
2  Judge held that Creasha was the only one entitled to pursue claims as the successor in interest.
3       Plaintiffs also argue that the survival claims are statutory claims.  The survival statute does
4  not create a new cause of action on the death of the decedent, rather it provides that the decedent's
5  cause of action may be pursued by a personal representative or a successor in interest.  Creasha is
6  a successor in interest and has standing to pursue the survival claim.  Creasha acknowledges that
7  Dylan and Devin are successors in interests and that they will receive their share of any recovery.
8  The fact that Creasha has standing alleviates the need for Dylan and Devin to bring suit.  Further,
9  because standing to pursue the survival claims does not implicate the Court's fundamental
10 jurisdiction, there is no basis to grant the Rule 12(h)(3) motion.

*Discussion*

1.  Waiver

Plaintiffs advance essentially three arguments to show waiver by Pelayo.

    a.  Rule 12(h)(1)

Plaintiffs contend that Rule 12(h)(1) applies to bars Pelayo's challenge.  Rule 12(h)(1) provides that a party waives the defenses listed in Rules 12(b)(2) through 12(b)(5) by either failing to make such a motion as provided by Rule 12(b) (i.e. before filing an answer), failing to include the defense in a responsive pleading or in an amendment allowed as a matter of course, or failing to raise the defense in a prior Rule 12(b) motion.  See Fed. R. Civ. P. 12(h)(1); Hillis v. Heineman, 626 F.3d 1014, 1017 (9th Cir. 2010).  Pelayo's motion does not challenge personal jurisdiction (Rule 12(b)(2)), venue (Rule 12(b)(3)), insufficient process (Rule 12(b)(4)), or insufficient service of process (Rule 12(b)(5)).  By its plain terms, Rule 12(h)(1) does not apply to Pelayo's motion.

Instead, Pelayo's motion is brought under Rule 12(h)(3).  That rule provides that, "[i]f the court determines that it lacks subject matter-jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  As stated above, Rule 12(h)(3) eliminates the general Rule 12(b) deadline with respect to Rule 12(b)(1) motions.  See Wood, 678 F.3d at 1082; see also Berkshire Fashions, 954 F.2d at 880 n.3.  A lack of subject matter jurisdiction may be raised by a court or by a party at any stage of the litigation.  Arbaugh, 546 U.S. at 506; Wood, 678 F.3d at 1082.  Therefore,

Pelayo's failure to raise what amounts to a Rule 12(b)(1) before filings a responsive pleading is irrelevant and does not result in a waiver.  See Wood, 678 F.3d at 1082.

          b.      Jurisdictional Nature of the Motion

Plaintiffs appear to argue that the challenge to Creasha's standing is not a jurisdictional matter.  There is authority that indicates that a plaintiff's failure to meet the requirements of § 377.10, § 377.11, and § 337.32 does not implicate jurisdictional standing issues.  See, e.g., McMurray v. County of Sacramento, 2012 U.S. Dist. LEXIS 11501, *3 (E.D. Cal. Jan. 31, 2012) (finding that the issue is one of lack of capacity and can be waived).  However, in *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 368-69 (9th Cir. 1998), the Ninth Circuit dealt with a challenge to the plaintiffs' standing to bring a Fourth Amendment claim on behalf of a deceased family member.  *Moreland* recognized that in 42 U.S.C. § 1983 cases, survivors of an individual killed as a result of excessive force may assert a claim on the decedent's behalf if the relevant state's law authorizes a survival action.  See id. at 369.  Citing *Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998), *Moreland* explained that the "party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets the state's requirements for bringing a survival action."  Moreland, 159 F.3d at 369. Because the plaintiffs did not allege that they brought claims in a representative capacity, and did not offer evidence that they had been appointed as representatives of the deceased's estate, the *Moreland* court affirmed the summary judgment on the plaintiffs' Fourth Amendment claims for lack of standing.  See id. at 370.

*Byrd v. Guess* in relevant part addressed a ruling made as part of a jury instruction conference.  See Byrd, 137 F.3d at 1130-31.  The district court found that the plaintiffs lacked standing to bring a Fourth Amendment claim on behalf of their deceased relative because they had not brought suit in a representative capacity.  See id. at 1130.  The issue before the Ninth Circuit was whether the district court erred in finding that the plaintiffs lacked standing to pursue the decedent's Fourth Amendment claims.  See id. at 1131.  *Byrd* recognized that California law permitted survival actions to be brought by either the personal representative of the estate or the decedent's successor in interest.  See id.  The complaint did not indicate that any plaintiff was

suing in a representative capacity, either as the estate's personal representative or as the successor in interest, and contained no allegations regarding the state law on successorship interests or whether any state law requirements had been met.  See id.  Citing *Northwest Envtl. Defense Center v. BPA*, 117 F.3d 1520, 1528 (9th Cir. 1997), *Byrd* noted that the plaintiffs had the "burden of alleging and proving standing."  Byrd, 137 F.3d at 1131.  Because the plaintiffs failed to allege their representative capacity in their complaint and failed to introduce any evidence that they were the decedent's "successors in interest" under California law, the Ninth Circuit concluded that the district court "properly found that the Byrds lacked standing to assert the violation of [the decedent]'s Fourth Amendment rights."  Id.[2]

*Northwestern Envtl.* was an administrative challenge, it did not involve claims under 42 U.S.C. § 1983 or the California survival statute.  See Northwest Envtl., 117 F.3d at 1524-27.  However, at the page cited by *Byrd*, page 1528, there is a discussion on standing.  Consistent with *Byrd*'s citation, page 1528 states that plaintiffs have the burden of establishing standing.  See id. at 1528.  Of note, the discussion in *Northwest Envtl.* was a discussion of *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  *Lujan* is the leading case that sets the requirements for Article III standing.  See Lujan, 504 U.S. at 560; Chhaudry v. City of L.A., 751 F.3d 1096, 1109 (9th Cir. 2014); Haro v. Sebelius, 747 F.3d 1099, 1108 (9th Cir. 2014).

Finally, in *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1117 n.1 (9th Cir. 2017), the Ninth Circuit *sua sponte* addressed standing, noting that it had an independent duty to raise jurisdictional issues.  The Ninth Circuit in part explained that the plaintiff-widow had to demonstrate that she had standing to bring the decedent's common-law invasion of privacy claim.  See id.  The Ninth Circuit held that the widow met the requirements of California's survival statutes and had standing.  See id.  The Ninth Circuit cited *Moreland* for the proposition that a party bringing a survival action has standing if she carries the burden of demonstrating that state law authorizes a survival action and that she meets the requirements for bringing such an action.  Id.  The Ninth Circuit then cited *Vermont Agency of Nat. Res. v. U.S ex rel. Stevens*, 529 U.S. 765 (2000) and parenthetically described that case as finding Article III standing for a *qui tam* plaintiff.  Id.

---

[2] *Byrd* was superseded by statute on other grounds.  Nicholson v. City of L.A., 935 F.3d 685, 696 n.5 (9th Cir. 2019).

Admittedly, none of the cases discussed above expressly deal with Rule 12(b)(1) or Rule 12(h)(3) as applied to the California survival statues.  However, as discussed above, *Moreland*, *Byrd*, and *Safari Club* each discussed a plaintiff's standing to pursue the claims of a decedent under survival statutes, and *Byrd* and *Safari Club* dealt specifically with California law.  Both *Byrd* and *Moreland* affirmed dismissals of attempted survival claims due to a lack of standing.  The term "standing" can be ambiguous and does not always refer to Article III standing.  See Minden Pictures, Inc. v. John Wiley & Sons, Inc., 795 F.3d 997, 1001 (9th Cir. 2015) (noting that challenges to Article III standing are to be raised through Rule 12(b)(1) motions, but issues regarding statutory standing are to be raised through Rule 12(b)(6) motions).  However, *Byrd* rested its analysis on a case that involved a discussion of Article III standing, *Northwest Envtl*.  Similarly, *Safari Club* discussed standing and *Moreland*, and cited *Vermont Agency* for that case's Article III standing analysis.  Critically, *Safari Club* addressed the widow's standing *sua sponte* because courts have a duty to examine jurisdictional issues even if not raised by the parties.  If the widow's standing through compliance with the California survival laws was not an Article III standing issue, *Safari Club* would not have addressed it *sua sponte*.  Given the language and analysis of *Byrd* and *Safari Club*, and particular *Safari Club*'s *sua sponte* consideration of the widow's standing, the Court must conclude that the Ninth Circuit's discussion of "standing" to pursue a § 377.30 survival action refers to Article III standing and is jurisdictional in nature.  See Safari Club, 862 F.3d at 1117 n.1; Byrd, 137 F.3d at 1131. As noted above, motions that challenge a party's Article III standing may be made at any time through a Rule 12(b)(1)/Rule 12(h)(3) motion to dismiss.  In re Apple iPhone, 846 F.3d at 319.  Therefore, the Court cannot find that Pelayo has improperly utilized Rule 12(h)(3) or failed to timely challenge Creasha's standing.[3]

---

[3] Even if the Court found *Byrd* and *Safari Club* to be distinguishable and accepted that Pelayo's challenge is not jurisdictional in nature, the Court's conclusion that no waiver has occurred would not change.  If Plaintiffs' position was accepted, then statutory standing would appear to be at issue and the proper mechanism to make that challenge would be Rule 12(b)(6).  See Minden Pictures, 795 F.3d at 1001.  The express language of Rule 12(h)(1) does not apply to Rule 12(b)(6) motions.  See Fed. R. Civ. P. 12(h)(1).  Under Rule 12(h)(2), a defense of failure to state a claim may be raised at trial.  See Fed. R. Civ. P. 12(h)(2)(C).  Because the defense can be raised at trial, it is not forfeited by failing to make a Rule 12(b)(6) motion prior to filing an answer.  See Citrus El Dorado LLC v. Stearns Bank, 552 F. App'x 625, 628 (9th Cir. 2014); Lucas v. City of Visalia, 726 F.Supp.2d 1149, 1155 (E.D. Cal. 2010).  Further, it is more efficient to address a Rule 12(b)(6) issue either in a motion in limine or a motion like this one, than to unnecessarily add another issue to be resolved at the trial itself.  Cf. In re Apple iPhone, 846 F.3d at 318-19.

        c.        Parties' Stipulation to File Fourth Amended Complaint

Plaintiffs rely on the stipulation made by the parties that permitted the filing of the Fourth Amended Complaint. The stipulation, which was signed by the Magistrate Judge, in relevant part acknowledged that Pelayo had filed a motion to dismiss the Third Amended Complaint, but that counsel had met and conferred and agreed that the proposed Fourth Amended Complaint "cures any deficiencies alleged in the Defendant's Motion to Dismiss Plaintiffs' Third Amended Complaint." Doc. No. 71.

The Court cannot find that this stipulation aids Plaintiffs for at least two reasons. First, by its express terms, the stipulation does not state that the Fourth Amended Complaint cures all possible deficiencies, rather, it cures any deficiencies "alleged in Defendants' Motion to Dismiss." Id. A review of the motion to dismiss the Third Amended Complaint shows that there was no argument that Creasha lacked standing through application of § 377.10.[4] Therefore, the stipulation has no effect on Pelayo's ability to challenge Creasha's standing through application of § 377.10. Second, even if the stipulation covered the arguments that Pelayo is now making, that does not cure the standing problem that is being raised. Article III standing is a jurisdictional matter. See In re Apple iPhone, 846 F.3d at 319; Minden Pictures, 795 F.3d at 1001. It is well established that federal subject matter jurisdiction cannot be created by stipulation. Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 n.1 (9th Cir. 1993). Therefore, the parties' stipulation relating to the filing of the Fourth Amended Complaint does not result in a waiver of, or otherwise prevent Pelayo from making, the standing challenges against Creasha in this motion.

In sum, there is no waiver and Pelayo may challenge Creasha's standing to bring the second through fifth causes of action through application of § 377.10.

        2.        Standing to Bring the Second through Fifth Causes of Action

Pelayo's argument depends on the statutory scheme of the California survival law. With some exceptions, "a cause of action for or against a person is not lost by reason of the person's

---

[4] Indeed, Plaintiffs do not point the Court to anywhere in which the application of § 377.10 has either been expressly argued by the parties or expressly addressed by the undersigned or the Magistrate Judge. This motion is the first time that any argument based on § 377.10 has been raised. For this reason, the fact that an adopted Findings and Recommendation noted that Creasha was the only Plaintiff who could bring a survival claim under § 377.30 is not dispositive of Pelayo's challenge.

8

death, but survives subject to the applicable limitations period." Cal. Code Civ. P. § 377.20; Wheeler v. City of Santa Clara, 894 F.3d 1046, 1052 (9th Cir. 2018); Lickter v. Lickter, 189 Cal.App.4th 712, 722 (2010). A "survival action" under § 377.20 " passes to the decedent's successor in interest, subject to [§ 7000 et seq. of the Probate Code], and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Code Civ. P. § 377.30; Hayes v. County of San Diego, 736 F.3d 1223, 1229 (9th Cir. 2013); Lickter, 189 Cal.App.4th at 722. A "successor in interest" is defined as "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." Cal. Code Civ. P. § 377.11; Lickter, 189 Cal.App.4th at 722; see Wheeler, 894 F.3d at 1052. Finally, the survival statutes define the term "beneficiary" based on whether the decedent died intestate. See Cal. Code Civ. P. § 377.10. Because there is no dispute that Elkins died intestate, a "beneficiary" for purposes of this case is defined in relevant part as "the sole person or all of the persons who succeed to a cause of action, or to a particular item of property that is the subject of a cause of action, under Sections 6401 and 6402 of the Probate Code [the laws of intestate succession] . . . ." Cal. Code Civ. P. § 377.10(b); see Lickter, 189 Cal.App.4th at 722. A person seeking to pursue claims as a successor in interest must file a declaration that provides statutorily required information. Cal. Code Civ. P. § 377.32.

There is no dispute that Elkins died intestate and has no "personal representative." Therefore, only a successor in interest may pursue survival claims in this case. See Cal. Code Civ. P. § 377.30. There is also no dispute that, through operation of Cal. Probate Code § 6401 and § 6402, Creasha, Dylan, and Devin are the heirs of Elkins. Thus, Pelayo is correct that Creasha, Dylan, and Devin are "beneficiaries" under § 377.10 of Elkins's estate. The key to this motion hinges on the significance of this fact. Pelayo contends that since they are all beneficiaries, Creasha, Dylan, and Devin must all be successors in interest and must all pursue survival claims in this case; less than full participation results in a failure of standing. After consideration, however, the Court cannot agree with Pelayo.

1    First, Pelayo's argument is novel. Pelayo cites no cases, and the Court is unaware of any, that have held that every person who is a "beneficiary" under § 377.10 must join in a survival claim as a successor in interest in order for standing requirements to be satisfied. Pelayo's argument is akin to the "one action rule" in wrongful death cases. In wrongful death cases under § 377.60, although "each heir . . . has a personal and separate wrongful death cause of action, the actions are deemed joint, single, and indivisible . . . ." Corder v. Corder, 41 Cal.4th 644, 652 (2007). Under the "one action rule," all heirs must join or be joined in a single § 377.60 wrongful death lawsuit, and there cannot be a series of separate wrongful death suits. Cotta v. County of Kings, 79 F.Supp.3d 1148, 1181 (E.D. Cao. 2015); Corder, 41 Cal.4th at 652; Cross v. Pacific Gas & Elec. Co., 60 Cal.2d 690, 692-93 (1964). The Court is unaware of any cases that have applied the "one action rule" or something like it to survival claims under § 377.30. Survival actions are not new. See Boeken v. Phillip Morris USA, Inc., 48 Cal.4th 788, 795 (2010). It seems likely that, if all beneficiaries must pursue survival claims together as successors in interests, that rule would have been expressly recognized before now. Given the absence of authority that has actually adopted the rule advocated by Pelayo, or at least some variation of the "one action rule" to survival claims, it is unlikely that Pelayo's position represents existing California law.

Second, Pelayo's position is contrary to the express language of § 377.30. That section provides for "the decedent's successor in interest" singular, not "successors in interest" plural to commence the action.

Third, other provisions of the survival statutes indicate that a single successor in interest may properly commence an action, even if other "beneficiaries" exist. Specifically, § 377.33 is entitled "Court orders to ensure proper administration of justice." That section permits a court in a survival action "to make any order concerning parties that is appropriate to ensure proper administration of justice in the case, including appointment of the decedent's successor in interest as a special administrator or guardian ad litem." Cal. Code Civ. P. § 377.33. One case has stated that § 377.33 "vests the trial court with the authority to determine a decedent's successor in interest for the action." In re Marriage of Weston, 2018 Cal. App. Unpub. LEXIS 2281, *8 (Apr.

2, 2018).[5]  The Law Revision Commission's Comments to this section explain:

> Section 377.33 is new. The court in which the action or proceeding is pending has authority to resolve questions concerning the proper parties to the litigation and to make conclusive and binding orders, including determinations of the right of a successor in interest to commence or continue an action or proceeding. The references to appointment of the successor in interest as a special administrator or guardian ad litem are intended to recognize that there may be a need to impose fiduciary duties on the successor to protect the interests of other potential beneficiaries.

Cal. Law Revision Com. Com., 14 West's Ann Code Civ. Proc. § 377.33.  Of note, the comment refers to the ability of a court to "impose duties on *the successor*" (singular) in order to "protect the interests of *other potential beneficiaries*."  Id.  The comment does not indicate that a court may protect the interests of "other successors."  Further, by recognizing that there may be "other beneficiaries," the comment seems to recognize that there may be beneficiaries who are not acting as successors and who may be prejudiced by the single party who is acting as the successor in interest.  Thus, § 377.33 authorizes courts "to issue orders to ensure that awards of survival damages are properly administered by successors in interest."  Gutterud v. Deveros, 2001 Cal. App. Unpub. LEXIS 1314, *8 (Nov. 27, 2001).  Under Pelayo's theory, there would be no other "beneficiaries" to worry about in muli-heir/beneficiary cases because, through operation of § 377.10 and § 377.10, all "beneficiaries" would be "successors in interests" and would have joined together as successors in interest to bring survival claims.  Thus, Pelayo's theory appears inconsistent with § 377.33.

Finally, the nature of a survival claim appears contrary to Pelayo's theory.  "Unlike a cause of action for wrongful death, a survivor cause of action is not a new cause of action that vests in the heirs on the death of the decedent."  Quiroz v. Seventh Ave. Ctr., 140 Cal.App.4th 1256, 1264 (2006); see Adams v. Superior Ct., 196 Cal.App.4th 71, 78-79 (2011); San Diego Gas & Elec. Co. v. Superior Ct., 146 Cal.App.4th 1545, 1553 (2007).  The survivor cause of action is a "separate and distinct cause of action which belonged to the decedent before death but, by statute, survives that event."  Quiroz, 140 Cal.App.4th at 1264; see Adams, 196 Cal.App.4th at 78-79 ("[A]

---

[5] Despite state rules, the Court may consider unpublished state cases as persuasive authority. See Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); Robles v. Agreserves, Inc., 158 F.Supp.3d 952, 976 n.12 (E.D. Cal. 2016).

survival action is a cause of action that existed while the decedent is alive and survives the decedent."); Sand Diego Gas, 146 Cal.App.4th at 1553 ("[The survival statutes] merely prevent the abatement of the decedent's cause of action . . . ."). The Ninth Circuit has explained that, under § 377.30, "if an injury giving rise to liability occurs before the decedent's death, then the claim survives to the decedent's estate." Tatum v. City & Cnty of San Francisco, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006). "A survivor claim is asserted on behalf of the victim or decedent." Brenner v. Universal Health Servs. of Rancho Springs, Inc., 12 Cal.App.5th 589, 605 (2017); see also Adams, 196 Cal.App.4th at 79; San Diego Gas, 146 Cal.App.4th at 1553; Quiroz, 140 Cal.App.4th at 1264. The person who acts as a decedent's successor in interest steps into the decedent's position as to the particular claim. See Exarhos v. Exarhos, 159 Cal.App.4th 898, 905 (2008); Peterson v. John Crane, Inc., 154 Cal.App.4th 498, 509 (2007). "There is but one survivor cause of action belonging to the decedent that is brought on behalf of the decedent by the decedent's personal representative or successor in interest." San Diego Gas, 146 Cal.App.4th at 1553. It is the decedent's estate that recovers any damages in a survival action. County of L.A. v. Superior Ct., 21 Cal.4th 292, 305 (1999). Thus, a "successor in interest who files a survival action for damages suffered by the decedent necessarily acts in a representative and fiduciary capacity and any damages awarded in that survival action are subject to the rights of the decedent's beneficiaries, creditors, and other persons." Gutterud, 2001 Cal. App. Unpub. LEXIS 1314 at *8.

The above cases demonstrate that a survival claim is a representative claim in which a successor in interest pursues a decedent's cause of action on behalf of the estate, with any recovery ultimately being distributed to the heirs/beneficiaries of the decedent estate. A survival cause of action does not create new claims for, or enforceable by, every heir/beneficiary, it is merely the continuation of the decedent's individual claim and the successor in interest steps into the decedent's position. As the continuation of the decedent's particular cause of action, it makes sense for a single successor in interest to step into the decedent's shoes and pursue the decedent's cause of action. Decisions can be made quickly, including settlement, through the single successor. In multi-heir/multi-beneficiary cases, requiring all of the multiple heirs/beneficiaries to join a case as essentially "co-successors in interest" would in effect split the decedent's claim in

the trial court into a series of sub-parts that are controlled by each of the multiple heirs/beneficiaries. Various decisions affecting the prosecution of the survival claim, including settlement, would of necessity have to be made unanimously because, despite the presence of multiple successors in interest, each survival cause of action is a single cause of action that was possessed only by the decedent. If there are several reasonable courses, or pros and cons that make the best litigation unclear, the co-successors could split on which litigation positions should be taken in the trial court, resulting in paralysis. Similarly, if less than all of the co-successors agree that a settlement should be accepted, no matter how reasonable the offer, then the case would not settle. In other words, requiring multiple heirs/beneficiaries to pursue a survival claim as successors in interest has the effect of splitting the decedent's cause of action in the trial court and does not promote efficiency or necessarily the best interest of the estate.

The above considerations lead the Court to conclude that the survival statutes do not require all heirs/beneficiaries to jointly pursue a decedent's cause of action as "co-successors in interest." Instead, the statutory scheme appears to explain which pool of individuals may qualify as a successor in interest to pursue a decedent's claim on behalf of the decedent's estate. If there are challenges or conflicts among those who attempt to act as the successor in interest, courts have authority through § 377.33 to choose the appropriate successor to pursue the survival claim in court or implement safeguards to ensure that substantial justice results to all individuals who have an interest in the survival claims.

As applied to this case, Creasha, Devin, and Dylan fit the statutory definition of a successor in interest. However, only Creasha has attempted to pursue Elkins's claims in the capacity of a successor in interest and only Creasha has filed the statutorily required declaration.[6] Creasha has fulfilled the requirements of being recognized as Elkins's successor in interest. Dylan and Devin are not required to pursue claims in this case as "co-successors in interest." Further, neither Devin nor Dylan assert a greater right to be a successor in interest or attempt to act as a successor in interest, and neither Devin nor Dylan (who are represented by a court appointed third-

---

[6] Pelayo does not challenge the adequacy of Creasha's § 377.32 declaration in this motion.

13

party guardian ad litem) has filed a request for any relief or safeguards under § 377.33. There is nothing before the Court to suggest that Creasha is not Elkins's successor in interest or does not have standing to pursue the estate's survival claims. Therefore, Pelayo's motion will be denied.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's Rule 12(h)(3) motion to dismiss the second through fifth causes of action (Doc. No. 209) is DENIED;

2. The parties are ordered to meet and confer regarding any further outstanding issues and the best way to proceed forward with this case; and

3. Within fourteen days (14) of service of this order, the parties will e-mail the Courtroom Deputy with at least three dates that the parties are available for a telephonic status conference, in which the status of the case and potential trial dates will be discussed.[7]

IT IS SO ORDERED.

Dated:  May 21, 2020

SENIOR DISTRICT JUDGE

---

[7] The parties are informed that, pursuant to Eastern District of California General Order 618, jury trials have been suspended indefinitely due to the COVID 19 pandemic.

14