UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF CECIL ELKINS, JR., et al.,<br><br>    **Plaintiffs**<br><br>    v.<br><br>HIPOLITO PELAYO,<br><br>    **Defendant** | CASE NO. 1:13-CV-1483 AWI SAB<br><br>**ORDER REGARDING STANDING OF CERTAIN PLAINTIFFS** |

   This is a civil rights lawsuit that stems from a fatal encounter between decedent Cecil Elkins, Jr. ("Elkins") and Defendant California Highway Patrol Officer Hipolito Pelayo ("Defendant"). Plaintiffs, who are the estate of Elkins and Elkins' family, seek damages under federal and state law arising out of the death of Elkins.[1] Currently pending before the Court is *inter alia* a dispute as to the standing of Plaintiffs Tina Terrell ("Terrell"), Valiecia Perez ("Valiecia"), and Dylan Elkins ("Dylan") to pursue state law wrongful death claims.[2] Pursuant to a pre-trial order and a revised briefing schedule, the parties have now fully briefed the issue. This order addresses the standing of Terrell, Valiecia, and Dylan.

---

[1] The parties are familiar with the facts of this case. A thorough recitation of the underlying facts can be found on the Court's order on Defendant's motion for summary judgment, Doc. No. 126.

[2] The standing of Cecil Elkins, Sr. was also in dispute. However, Cecil Elkins, Sr. died in late 2018 and all of his claims were dismissed pursuant to stipulation on September 16, 2019. See Doc. Nos. 163, 199.

*Defendant's Argument*

Defendant argues that in order to have standing to pursue state law wrongful death claims, Plaintiffs Tina Terrell, Valiecia Perez, and Dylan Elkins must meet the requirements of Cal. Civ. Code § 377.60, which means that they must show that they were financially dependent on Elkins or, with respect to Valiecia and Dylan, that they were living in Elkins's household. However, discovery in this action shows that Elkins was unemployed at the time of his death, his wife claimed him as a dependent on her taxes, and he was living in a trailer in his father's driveway or occasionally with his mistress. Thus, Elkins was dependent on his wife, father, and mistress for food, housing, and other support. Further, Valiecia and Dylan were supported by their mother and grandparents and were not living in Elkins's household.

*Plaintiffs' Arguments[3]*

Plaintiffs concede that Tina Terrel lacks standing to bring a state law wrongful death claim. However, Valiecia has standing as the step-daughter of Elkins. The evidence will demonstrate that Valiecia resided with Elkins's household for the 180 days preceding his death and was dependent upon him for at least half of her support. Additionally, in supplemental briefing, Plaintiffs rely on *Stennet v. Miller*, 34 Cal.App.5th 284 (2019) to argue that the term "children" in Cal. Code Civ. Pro. § 377.60(a) is ambiguous and that a child's standing under § 377.60(a) ultimately depends on whether the child could inherit from the decedent. The Probate Code sections that establish a father-child relationship for intestate succession when the father "openly held out the child as his own." A father-child relationship may also arise under the Probate Code when a man marries a child's natural mother after the child's birth and then receives the child into his home and openly holds out the child as his natural child. Plaintiffs contend that Valiecia has standing because she enjoyed a very close relationship with Elkins that continued to Elkins' death, Elkins was the only father Veliecia has known, Valiecia referred to Elkins as "dad," and Elkins referred to Valiecia as his "daughter."

---

[3] A significant portion of Plaintiffs' brief discusses standing to pursue a Fourteenth Amendment familial relations claim. However, that is not the subject of the current dispute. Defendant challenges the standing of four Plaintiffs to pursue a state law wrongful death claim under Cal. Civ. Code § 377.60. Therefore, the Court does not consider, and makes no rulings, regarding any Plaintiff's Fourteenth Amendment cause of action in this order.

2

With respect to Dylan Elkins, Plaintiffs argue that he is the biological son of Elkins as shown by his birth certificate. The circumstantial evidence offered by Defendant does not rebut the presumption of parentage from the birth certificate. The birth certificate, Plaintiffs' testimony (including Creasha Elkins's testimony which will clarify that she had misstatements of dates in her deposition), and Elkins's prison records will show that Dylan is Elkins's natural born son.

*Legal Standard*

In relevant part, California provides for "a cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by . . . (a) The decedent's surviving . . . children . . . (b) . . . if they were dependent on the decedent . . . stepchildren . . . (c) A minor . . . if, at the time of the decedent's death, the minor resided for the previous 180 days in the decedent's household and was dependent on the decent for one-half or more of the minor's support." Cal. Civ. Code § 377.60(a), (b), (c). "The category of persons eligible to bring wrongful death actions is strictly construed." A.S. v. Miller, 34 Cal.App.5th 284, 290 (2019); Soto v. BorgWarner Morse TEC, Inc., 239 Cal.App.4th 165, 188 (2015). "Dependence" refers to "financial dependence," and a stepchild or minor is "dependent" upon a decedent if the decedent provided the requisite necessaries of life, such as food, shelter, clothing, and medical treatment. Soto, 239 Cal.App.4th at 189-90; Chavez v. Carpenter, 91 Cal.App.4th 1433, 1445-47 (2001). "Dependence," including the extent of such dependence, under § 377.60(b) and (c) is a question of fact that is determined on a case by case basis. Soto, 239 Cal.App.4th at 190; Chavez, 91 Cal.App.4th at 1445-48. However, merely providing "some of the niceties of life they may not otherwise be able to afford," does not make person "dependent" under § 377.60(b) and (c). Soto, 239 Cal.App.4th at 189 (quoting Perry v. Medina, 192 Cal.App.3d 603, 610 (1987)). The term "household" is generally understood to mean living with the decedent in the same dwelling. See Nash-Perry v. City of Bakersfield, 2021 U.S. Dist. LEXIS 165273, *29-*30 (E.D. Cal. Aug. 31, 2021) (finding that minor was not a part of the decedent's household for the preceding 180 days because the minor only lived with decedent for two months); Moore Shipbuilding Corp. v. Industrial Acci. Com., 185 Cal.200, 207 (1921) (in the context of workmen's compensation noting that "household" is "variously used to designate people, generally, who live together in the same

3

house, including the family, servants, and boarders, or it may be used as including only members of the family relation."); Tolley v. Engert, 71 Cal. App. 442, 443-44 (1925) (finding that "the household consisted of said Tolley, the wife, and two of the three adult daughters . . . all of whom were comfortably maintained by the father in the family home . . . ."); www.merriem-webster.com/dictionary/household ("those who dwell under the same roof and compose a family; *also*: a social unit composed of those living together in the same dwelling.").  Finally, to have standing as a "child" under § 377.60(a), the "child" must have a legal right to inherit from the decedent through the California laws of intestate succession.  A.S., 34 Cal.App.5th at 296.  A child may inherit through intestate succession if the child is the marital child of the decedent, the child is adopted, illegitimate children between the decedent and the mother, non-marital children acknowledged by the decedent, or a non-marital child if the parentage of the decedent has been established. Steed v. Imperial Airlines, 12 Cal.3d 115, 119 (1974); A.S., 34 Cal.App.5th at 294-96.

*Deposition Testimony*

Plaintiff Creasha Elkins (the wife of Elkins) ("Creasha") has testified that:  (1) Elkins worked regularly for a company four months between January and November 2012; (2) she paid the rent or a majority of it; (3) Elkins was claimed as a dependent on Creasha's tax returns from 2008 through 2012; (4) Elkins spent three months in the summer of 2012 living in the home of his mistress; (5) Elkins returned to live with her in August 2012, but she kicked him out of the home about 3 to 4 days before he was killed in November 2012; (6) Elkins and Creasha were living separately when Elkins died, with Elkins living in a trailer in his father's driveway; (7) Elkins was incarcerated for over a year and half between 2003 and 2005, and Creasha and Elkins were not physically co-present in the nine-months preceding Dylan Elkins's birth; and (8) she threatened Elkins with divorce, but it never came about and Elkins knew that Creasha's threat was a lie.  See Creasha Depo. 26:8-27:13, 61:1-21, 67:6-24, 69:8-13, 69:23-25, 71:2-72:7, 84:18-24, 147:20-150:8, 177:4-11.

Cecil Elkins, Sr. (the father of Elkins) ("Cecil, Sr.") testified that:  (1) Elkins would sometimes stay in a trailer owned by Cecil, Sr. and located in Cecil, Sr.'s driveway; (2) Elkins's truck was owned and paid for by Cecil, Sr.; (3) Cecil, Sr. provided financial support to Creasha

1  and her children (including Valiecia and Dylan) by paying for groceries and utilities about every
2  month and practically Elkins's whole life; (5) his mother would help Creasha and her children
3  with groceries or utilities if Cecil, Sr. could not help out immediately; and (6) he paid Elkins for
4  working on various jobs (digging septic tanks, installing shade barns, working at a dairy, etc.)
5  periodically between January 2012 and November 2012.  See Cecil, Sr. Depo. 117:13-19, 118:12-
6  17, 120:18-25, 145:24-146:15, 148:6-15:20, 153:17-155:23.

7       Doris Elkins (Elkins's stepmother) testified that: (1) Elkins lived in the trailer in her
8  driveway almost continuously from January 2012 to the time he was killed in November 2012,
9  and (2) as far as she knew, Elkins lived alone in the trailer.  See Doris Depo. 14:24-15:18.

10      Valiecia (stepdaughter of Elkins) testified that, before Elkins died, her grandmother
11 Barbara would help pay for electricity, water, rent, or "something" if there was a shortage.  See
12 Valiecia Depo. 63:7-24.

13     *Discussion*
14      a.     <u>Tina Terrell</u>
15      In light of Plaintiffs' concession that Plaintiff Tina Terrel lacks standing, her state law
16 wrongful death claims will be dismissed.

17      b.     <u>Valiecia Perez</u>
18      With respect to § 377.60(a), there is no dispute that Elkins is not Valiecia's biological
19 child, and there is no evidence that Valiecia was adopted by Elkins.  Importantly, Plaintiffs do not
20 adequately explain how Valiecia could inherit from Elkins as an "heir" through California's laws
21 of intestate succession.  Therefore, Plaintiffs have not adequately shown that Valiecia has standing
22 under § 377.60(a).  See <u>Steed</u>, 12 Cal.3d 115, 119 (1974); <u>A.S.</u>, 34 Cal.App.5th at 294-296.

23      With respect to § 377.60(b) and (c), although Plaintiffs argue that Valiecia was dependent
24 on Elkins for at least half of her support, the evidence presented does not demonstrate dependence
25 to any degree.  The evidence indicates that from January 2012 to November 2012, Creasha paid a
26 majority (which by definition is greater than one-half) of the rent.  Cecil, Sr. and Elkins's mother
27 also appear to have regularly contributed groceries, paid utility bills, and perhaps helped with the
28 rent.  There is no evidence regarding the provision of clothing or medical treatment.  Further, it

appears that Elkins's employment was sporadic, with him working for a trucking company for four out of the eleven months he was alive in 2012, and Elkins did odd jobs for his father at various points in 2012. Viewing the evidence in the light most favorable to Valiecia, the evidence presented is not sufficient to support a finding of dependence under § 377.60(b) or (c).

Additionally, with respect to § 377.60(c), the evidence does not indicate that Valiecia was a part of Elkins's household in the preceding 180 days. Elkins was killed on November 13, 2012. In order to meet the 180 day requirement, the evidence needs to demonstrate that Valiecia lived in the same home as Elkins from roughly May 13, 2012 through November 13, 2012. However, Creasha testified that in the summer of 2012, Elkins did not live in the same home as Valiecia and Creasha. Instead, Elkins was living for three months in the home of his mistress before ultimately returning to Creasha and Valiecia sometime in August 2012. Three months is a significant period of time, and leaving the home of one's wife for the home of one's mistress indicates an abandonment of the prior familial household. Moreover, prior to the three summer months that Elkins was living with his mistress, the testimony of Cecil, Sr. and Doris indicate that he had been living at least periodically alone in the trailer that was parked in their driveway. While the Court cannot say precisely under what circumstances, how long, or even how often that Elkins lived alone in the trailer in 2012, the testimony suggests a fluid living situation during 2012. Finally, Creasha kicked Elkins out of the home in November 2012. Given the evidence submitted, and in particular Creasha's testimony that Elkins lived with his mistress for three months before returning to the family home in August 2012, the evidence does not support a finding that Valiecia was a member of Elkins's household for the 180 days required by § 377.60(c).

In sum, while Plaintiffs argue that the evidence will show that Valiecia was a member of Elkins's household for the preceding 180 days from Elkins's death and that Elkins provided at least half of Valiecia's necessities, Plaintiffs do not address the actual arguments made by Defendant, challenge the evidence submitted by Defendant, or provide (or at least specifically describe) evidence that supports their position. Therefore, the Court concludes that Valiecia was neither dependent upon Elkins nor a member of Elkins's household for purposes of § 377.60(b) and (c). Dismissal of Valiecia's state law wrongful death claim is appropriate.

    c. <u>Dylan Elkins</u>

Based on the arguments of the parties, Dylan could have standing as a child of Elkins under § 377.60(a), a stepchild of Elkins under § 377.60(b), or a dependent minor under § 377.60(c).

With respect to § 377.60(b) and § 377.60(c), the parties have essentially made the same arguments regarding Dylan as they did for Valiecia. In the absence of contrary evidence or a specific description that would support standing under these two provisions, the Court reaches the same conclusion for Dylan as it did for Valiecia. The evidence submitted is insufficient to support a finding that Dylan was dependent on Elkins or a member of Elkins's household for the 180 days that preceded Elkins's death. Therefore, Dylan does not have standing under § 377.60(b) or § 377.60(c).

With respect to § 377.60(a), Plaintiffs argue Creasha's deposition involves misstatements of dates, but that Creasha's trial testimony, Dylan's birth certificate (which names Elkins as the father), and prison records will be sufficient to show that Elkins was Dylan's natural father. Defendant has not replied to these representations. Given the representations of Plaintiffs, the Court finds that the jury will have to determine whether Dylan has standing to pursue state law wrongful death claims under § 377.60(a).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The state law wrongful death claims of Plaintiffs Tina Terrel and Valiecia Perez are DISMISSED; and
2. Plaintiff Dylan Elkins does not have standing to pursue state long wrongful death claims under Cal. Code of Civ. P. §§ 377.60(b) or (c).

IT IS SO ORDERED.

Dated: __April 13, 2022__      _/s/ signature_
                                            SENIOR DISTRICT JUDGE