UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF CECIL ELKINS, CREASHA ELKINS, individually and as guardian ad litem for DYLAN ELKIN and DEVIN ELKINS, VALIECIA PEREZ, and TINA TERRELL,<br><br>**Plaintiffs**<br><br>v.<br><br>**HIPOLITO PELAYO,**<br><br>**Defendant** | CASE NO. 1:13-CV-1483 AWI SAB<br><br>ORDER ON PLAINTIFFS' MOTION FOR RECONSIDERATION<br><br>(Doc. No. 296) |

This is a civil rights lawsuit that arises from the fatal encounter between decedent Cecil Elkins, Jr. and Defendant California Highway Patrol Officer Hipolito Pelayo ("Defendant" or "Pelayo"). Currently before the Court is a trial brief by Plaintiffs that is in reality a motion for reconsideration of the Court's ruling on Defendant's motion in limine number four. For the reasons that follow, Plaintiffs motion will be denied.

*Plaintiffs' Argument*

Plaintiffs argue that reconsideration is warranted because of misapplication of the law. While the Court cited the appropriate Federal Rule of Evidence ("FRE") 404(b)(2) standards, the Court lost focus of the facts that made the prior evidence relevant to this case. Defense expert Clarence Chapman will testify that "Judgment comes into consideration based on an officer's ability to articulate a threat that can be viewed as objectively reasonable." Chapman Depo. 83:2-18. Chapman will also opine that as of November 2012, Pelayo appeared to be "extremely

professional, experienced and mature." Chapman Depo. 84:8-15. While Chapman would not concede that lack of maturity could affect an officer's judgment in a scenario such as that faced by Pelayo, he does concede that the statement could be relevant to Pelayo's state of mind. Chapman Depo. 135:11-136:12. The Court's conclusion that there is no expert testimony to the effect that this statement is relevant to Pelayo's conduct in this case is not true. Chapman's expert testimony confirms that the prior incident could be useful to the jury to establish Pelayo's motive and intent during the incident in question, as suggested by the Ninth Circuit. Also, to the extent that Pelayo is going to portray himself as an upstanding officer who always exercises good judgment in the field, the jury should be able to consider this prior incident.

      Plaintiffs argue that the prior incident is similar to the shooting in this case. The prior incident occurred just 2 years prior and involves strikingly similar facts. Pelayo was chasing an unarmed suspect accused of assaulting an officer with a deadly weapon, i.e. a motor vehicle. The relevance of the prior incident is critical to the issue of intent – Did Pelayo intend to subdue a perceived violent felon, or did Pelayo intend to use any means necessary to stop a fleeing felon from getting away? The latter is a clear violation of the Fourth and Fourteenth Amendments.

      Plaintiffs also argue that Court relied too much on the CHP's internal investigation of the prior incident because it is the conduct of Pelayo, not the findings of the internal investigation, that is relevant. The investigator is not the trier of fact, nor does his conclusion determine Pelayo's motive. Pelayo's conduct in the prior incident speaks volumes to what he actually perceived and his response thereto when Elkins was fatally shot. The admission of this evidence would not create a separate mini-trial as Plaintiffs only seek to introduce evidence of Pelayo's prior similar act, not the investigation of the same. The prior incident should not be disregarded on the grounds that the CHP found Pelayo's conduct to be within policy, particularly since CHP's policies do not bear on the immaturity of Pelayo's actions or on his motive and intent.

      Finally, the Court misapplied *United States v. Berckmann* to this case, and it is an incorrect statement of the law of this case to suggest that the only factual issue is whether Elkins reached for his waistband. Pelayo's motive and intent is highly relevant to this case. Was Pelayo motivated to shoot Elkins because he feared for his life or did he shoot to keep Elkins from running?

*Defendant's Opposition*

Pelayo argues that reconsideration is improper.  Initially, Pelayo argues that this motion should be denied because it was not timely filed in accordance with the Court's briefing schedule.  Further, the motion fails to set forth any new facts or law as required by Local Rule 230(j).  Instead, the motion is a disagreement with the Court's prior ruling, which is an insufficient basis for reconsideration.

Pelayo also argues that the motion demonstrates that Plaintiffs are attempting to introduce evidence of the prior incident and find him guilty in this case based on how he acted in the prior case.  Plaintiffs rely on a disputed statement from the factually distinct incident two years prior to improperly argue that Pelayo had a motive to shoot fleeing felons.

Pelayo also argues that the events of this case are not factually similar to the prior incident.  In the prior incident, Pelayo was responding to assist a detective who was in pursuit of a felon who had rammed another officer's vehicle with a stolen car before fleeing.  Pelayo was aware that the felon was known to be armed, mentally unstable, gang affiliated, a parolee at large, and extremely dangerous.  When the stolen vehicle was stuck in the mud, the felon fled on foot and was pursued on foot by the detective.  When Pelayo arrived on scene, he only heard a broadcast from the detective which consisted only of repeated yelling over the radio for the felon to "get on the ground," with no further transmissions despite attempts to contact the detective.  Pelayo ran through the mud of a pitch black dirt field in an attempt to located and backup the detective.  As Pelayo was running through the field, he suddenly saw the felon appear about 5 or 6 feet in front of him, on his knees but arching his back in an attempt to stand; Pelayo did not see the detective and concluded that the scene was not secure.  Pelayo decided to tackle the suspect.  As he was about to tackle the suspect, he suddenly saw the detective and realized that he would collide with the detective if he tackled the felon.  Pelayo then decided to deliver a distracting blow to the felon.  Only after the blow was delivered did Pelayo see that the felon was already handcuffed.  Although the felon later filed a formal complaint about being struck in the face by Pelayo, the felon did not complain about any statements made by Pelayo.  By contrast, this case occurred two years after the prior incident.  Pelayo was advised that Elkins was spun out on meth, was wanted for

1 attempted homicide on two law enforcement officers, and had displayed a pattern of violence
2 towards law enforcement. When Elkins was contacted, Pelayo observed Elkins violently resist
3 arrest by throwing metal objects and tools at a pursuing officer while ignoring repeated
4 instructions to surrender, jumping a tall fence, and reaching for his waistband in a manner
5 consistent with attempting to retrieve a firearm. Unlike the prior incident, Elkins was not in
6 custody, continued to pose an active threat, and engaged in behaviors consistent with an intent to
7 shoot.

8 Pelayo also argues that his use of force against the felon in the prior incident was upheld.
9 Thus, the prior event does not reflect a history of excessive force towards arrestees or those that
10 flee. Moreover, Plaintiffs omit the critical fact that there have been no other complaints ever made
11 against Pelayo for the use of force, nor have there been any similar reports or events since the
12 2010 prior incident. Because Pelayo was exonerated for his use of force in the prior incident, the
13 prior events are not admissible.

14 Pelayo also argues that the prior incident and alleged statements are inadmissible under
15 FRE 403. There is a significant danger of confusion and waste of time because Pelayo argues that
16 he will then introduce events regarding his actions during the prior incident, the factual
17 circumstances of the prior incident, the reasons for his actions, and the legality of his actions. This
18 will entail testimony from additional non-subpoenaed witnesses. Pelayo also argues that he would
19 introduce evidence that he has been involved in hundreds of foot chases over the course of his
20 career and there have been no similar complaints by anyone who was chased by Pelayo.

21 Finally, Pelayo argues that the Court did not misapply *Berckmann*.

22 *Legal Standards*

23     1. Reconsideration

24 The Ninth Circuit has instructed that motions for reconsideration "should not be granted,
25 absent highly unusual circumstances, unless the district court is presented with newly discovered
26 evidence, committed clear error, or if there is an intervening change in the law." Marlyn
27 Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009); see
28 Deerpoint Grp., Inc. v. Agrigenix, LLC, 400 F. Supp. 3d 988, 993 (E.D. Cal. 2019). "A motion for

4

reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Marlyn, 571 F.3d at 880; Deerpoint, 400 F.Supp.3d at 993-94. The mere disagreement with the court's prior decision or the mere recapitulation of arguments that were made previously but rejected are not sufficient bases to grant reconsideration. Deerpoint, 400 F.Supp.3d at 993; American States Ins. Co. v. Insurance Co. of Pa., 245 F.Supp.3d 1224, 1227 (E.D. Cal. 2017); Cunningham v. Kramer, 178 F.Supp.3d 999, 1003 (E.D. Cal. 2016). Additionally, Local Rule 230 in relevant part requires a moving party to shows that new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion, and why the facts and circumstances were not shown at the time of the prior motion. Local Rule 230(j); Deerpoint, 400 F.Supp.3d at 994; Cunningham, 178 F.Supp.3d at 1003.

### 2. Rule 404(b)

Under FRE 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); United States v. Lague, 971 F.3d 1032, 1038 (9th Cir. 2020). However, evidence of the crime, wrong, or other act may be admitted for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); United States v. Charley, 1 F.4th 637, 647 (9th Cir. 2021). The proponent of another crime, wrong, or other act has the burden to show: (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) the past act is similar to the current conduct at issue (similarity). See Charley, 1 F.4th at 647; United States v. Berckmann, 917 F.3d 999, 1002 (9th Cir. 2020). "In the civil rights context, courts are reluctant to admit evidence of prior excessive force complaints against a police officer if the complaints are unsubstantiated." United States v. Bailey, 696 F.3d 794, 800 n.6 (9th Cir. 2012). "[T]he relevance of a single unsubstantiated charge is obviously limited," Berkovich v. Hicks, 922 F.2d 1018, 1023 (2d Cir. 1991), and "inconclusive allegations of prior similar behavior is not useful." Bailey, 696 F.3d at 800 n.6.

5

*Prior Ruling*

In the original order Defendant's fourth motion in limine, the Court granted the motion and excluded all evidence relating to the prior incident, including Pelayo's statement to the felon of "that's what you get for making me run, bitch" (or words to that effect), and later saying after Pelayo, the Suspect, and the detective were walking out of the field "you're lucky I didn't shoot your ass." The Court explained as follows:

> Plaintiffs contend that evidence of the 2010 incident is admissible because it weighs on Pelayo's credibility and integrity. The Court takes this to mean that the 2010 incident reflects poorly on the professionalism of Pelayo, that he lied about self-reporting his actions because the investigation was prompted by complaints from the Tulare Officer, and that he has a documented intolerance for people who run. However, as detailed above, the investigation into this matter found that Pelayo did self-report the 2010 incident to his supervising sergeant. See Doc. No. 258 at ECF p.12. Although Pelayo did not immediately report the incident, he unsuccessfully attempted to do so shortly after the incident and eventually was able to report the matter early the next morning. See id. The investigation found that Pelayo's reporting timeframe was justified and within departmental policy. See id. Therefore, this aspect of the 2010 incident does not reflect negatively on Pelayo and does not adversely reflect integrity or credibility. Further, the investigation exonerated Pelayo of using excessive force when he struck the Suspect. The report noted that Pelayo acknowledged that he used "discourteous language" and found that statements of either "That's what you get for making me run, bitch," or "That's what you get for fucking making me run," were a violation of the policy against using discourteous language in the course of duties. See id. at ECF p.10. That is, the only unprofessional conduct found in the investigation was for the use of discourteous language. The Court cannot find the fact that Pelayo used discourteous language casts any negative light on Pelayo's credibility, particularly when Pelayo self-reported and acknowledged making at least one of the statements (both of which are extremely similar) that was found to be discourteous. Finally, and relatedly, the 2010 incident is not a documented instance of intolerance for those that run. As discussed above, the investigation determined that Pelayo's use of force was reasonable under the circumstances, was done in aid of another officer and to stabilize the situation, and the amount of force used was appropriate and within policy given Pelayo's reasonable perceptions. See id. at ECF pp.8-9.
>
> Plaintiffs also argue that a jury could view the 2010 incident and discredit Pelayo's recount of fatally shooting Elkins because he also claimed that he could not see the unarmed Suspect's hands. The Ninth Circuit has held that an officer's use of the same explanation to justify deadly force in very similar cases could be viewed as a dishonest "song and dance" that discredits the explanation. Cruz v. City of Anaheim, 765 F.3d 1076, 1080 (9th Cir. 2014). However, Pelayo is not using the same story to justify deadly force in two very similar cases. The 2010 incident involved Pelayo running to the aid of an officer whose last known communication indicated distress, Pelayo saw the Suspect getting up, and he hit the Suspect with his fist. Pelayo did not have his firearm drawn, did not utilize deadly force, and did not say that the Suspect made a furtive movement or reached towards his waistband. Rather, Pelayo utilized a distracting blow because he could not determine that the situation was stable and did not know that the Suspect had been handcuffed. Moreover, the final report indicated that the conditions were difficult –

the field was muddy and it was very dark with minimal ambient light. Even the Tulare Officer described the lighting condition as nearly "pitch black," which makes it likely that the running Pelayo did not see that the Suspect was handcuffed. That is, the 2010 incident is not very similar to this case because dramatically different levels of force are involved, different environmental conditions existed, different observations by Pelayo were made, a different policing situation was involved, and different justifications by Pelayo were made to justify different types of force. Therefore, the 2010 incident and the justifications used by Pelayo are not sufficiently similar to the incident with Elkins to materially call Pelayo's credibility into question. Cf. Cruz, 765 F.3d at 1080.

Finally, Plaintiffs argue that the purported statement, "You're lucky I didn't shoot your ass," is a threat that is admissible to show intent for purposes of punitive damages. The Court takes Plaintiffs' argument to be that, because the Suspect made Pelayo run, Pelayo was mad and made the statement, and since Elkins made Pelayo run, this time Pelayo followed through and intent to shoot Elkins largely because Elkins made him run and did not actually pose a threat.

The statement is technically not an act. In and of itself it is a statement by Pelayo and thus, an admission of a party opponent. See Fed. R. Evid. 801(d)(2)(A). However, the alleged statement was made two years prior to the incident with Elkins. In order for the statement to be probative of intent or motive, it must have been made in a context that is similar to the circumstances involving Elkins and that reflects Pelayo's intent. Cf. Charley, 1 F.4th at 647 (noting similarity requirement under Rule 404(b)(2)); United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir. 1991) (expressly recognizing that other acts must be similar in order to prove intent).

As just discussed, there are significant differences between the 2010 incident and the incident with Elkins. While Pelayo did have to run in connection with the apprehension of a dangerous suspect, different types of force were used, Pelayo did not have his gun drawn, the different types of force were used for different reasons, the Suspect did not attempt to reach for his waistband, the environmental conditions made movement (muddy field) and vision (nearly pitch black) very difficult, Pelayo only saw the Suspect once the Suspect had been tasered and handcuffed, and it appears that a primary purpose of Pelayo running was to get to the aid of a fellow officer (as opposed to simply trying to apprehend the Suspect) whose status was unknown after the officer's last transmission indicated danger/distress. Further, the statement is not actually a threat because it did not inform the Suspect of any consequence if the Suspect would do or say a particular thing. Rather, the statement seems to reflect frustration. Pelayo allegedly made the statement after the Suspect was completely subdued and as Pelayo, the Suspect, and the Tulare Officer were together walking out of the field. The statement was not made while Pelayo was using any force, and the statement does not explain any action taken by Pelayo toward or against the Suspect. Therefore, the statement does not appear to fairly reflect any aspect of Pelayo's intent during the 2010 incident. In sum, the Court is not convinced that the context of the statement reflects Pelayo's intent or motive or is sufficiently similar to the circumstances involving Elkins to be admissible under Rule 404(b)(2).[1]

To the extent that the 2010 incident or Pelayo's alleged "shoot your ass" statement

---

[1] Plaintiffs also indicate that the statement is relevant to show lack of accident. However, to the Court's knowledge, Pelayo has never contended that any accident occurred. Because the presence or absence of an accident is not a part of this case, the absence of an accident is not a viable Rule 404(b)(2) purpose.

7

> is probative of Pelayo's intent when he shot Elkins, the probative value is low. The CHP's investigation of the 2010 incident found that Pelayo's use of force was reasonable and appropriate. The only violation of departmental policy was for discourteous language, and the discourteous language was not the "shoot your ass" statement. In fact, that alleged statement does not appear anywhere in the final report, even though Sgt. Tweed took and recorded the Tulare Officer's statement and authored the final report. Thus, Sgt. Tweed was aware of the alleged statement. To the Court's knowledge, Pelayo has always denied that he made the "shoot your ass" statement. The fact that this statement was not found to be a violation of departmental policy, or even addressed in the final report, indicates that there was insufficient substantiation. This lessens the probative value of the statement. See Bailey, 696 F.3d at 800 n.6; Sibrian v. City of L.A., 288 F. App'x 385, 387 (9th 2008); Berkovich, 922 F.2d at 1023.
>
> Finally, considering the evidence and testimony that would be necessary to address the 2010 incident, the investigation, and Pelayo's various statements, significant court time would be taken and there is a real danger of creating a mini-trial. The greater the evidence involved and the trial time consumed, the greater the danger jury confusion. When combined with the natural prejudicial effect that can arise from the fact that complaints were made about Pelayo and investigated by the CHP, the Court finds that the probative value of the 2010 incident (including the "shoot your ass" statement) is substantially outweighed by the danger of unfair prejudice, confusion, and the creation of a mini-trial. See Fed. R. Evid. 403; Bailey, 696 F.3d at 800 n.6; Duran v. City of Maywood, 221 F.3d 1127, 1133 (9th Cir. 2000); Sibrian, 288 F. App'x at 387; Berkovich, 922 F.2d at 1023.

Doc. No. 282 at 22:11-26:15.

*Discussion*

The Court cannot conclude that reconsideration is warranted.

First, the Court set a deadline of noon on May 18, 2022 for the parties to submit additional motions and supplemental briefing. See Doc. No. 292. Plaintiffs did not file this motion for reconsideration until after 10:00 p.m. on May 18. See Doc. No. 296. Because Plaintiffs failed to meet the deadline, the motion for reconsideration can be denied as untimely.

Second, and relatedly, motions for reconsideration should not raise arguments that could have been raised earlier. See Marlyn, 531 F.3d at 880; Deerpoint, 400 F.Supp.3d at 994. It is unclear why Plaintiffs did not raise some of the new arguments as part of their original opposition to the motion. Further, Plaintiffs did not raise any further objections to the Court's ruling until May 13, 2022 at the pre-trial conference, even though the motions in limine ruling was docketed on April 14, 2022. In other words, Plaintiffs had the ruling for a month before they made an objection. Given the arguments made in Plaintiffs' briefing, it is unclear why reconsideration as well as some of the arguments made be counsel now could not have been made earlier. Therefore,

the motion also appears untimely apart from the failure to meet the Court's briefing schedule. Cf. Marlyn, 531 F.3d at 880; Deerpoint, 400 F.Supp.3d at 994.

Third, Plaintiffs indicate that the Court made a false statement by finding that no expert concluded that Pelayo's "shoot your ass" and "bitch" statements were irrelevant to this case. However, the Court made no such conclusion. The Court's discussion of this issue did not mention expert testimony, either in general or from a specific witness. While the Court's recapitulation of Pelayo's arguments indicated that no expert witness was critical of Pelayo's actions during the prior incident, that recapitulation is neither the analysis or conclusion of the Court – it is merely the Court explaining what Pelayo was arguing. Moreover, Plaintiffs never argued in opposition to Pelayo's motion in limine that Chapman's expert testimony was relevant to the admissibility of any aspect of the prior incident. Plaintiffs do not explain why the issue of Chapman's expert testimony was not made as part of their opposition to the motion in limine. See Marlyn, 571 F.3d at 880; Deerpoint, 400 F.Supp.3d at 993; Local Rule 230(j). Finally, Chapman testified that: prior incidents do not necessarily impact the determination of an officer's judgment; Chapman believed that Pelayo was experienced, alert, and mature based on his discussions with him in 2016 but Chapman was not present at the November 2012 shooting; that Pelayo striking a subject who had fled and then stating "Why did you make me run, bitch" would not affect any assessment of emotional maturity in relation to this case because the circumstances in this case were totally different; Chapman's maturity assessment is based on an officer's adherence to POST standards and not some sort of psychological assessment; Chapman's maturity assessment was based only on the events of November 13, 2012, and he did not focus on any past events involving Pelayo; the statement that "this is what you get for making me run, bitch," has nothing to do with maturity but has everything to do with discourteous conduct and can have everything to do with the officer's state of mind, but state of mind is not a maturity issue. See Doc. No. 296-1. The cited deposition testimony of Chapman does not in any way involve the "shoot your ass" alleged comment, which appears to be the more important of the two statements. Further, Chapman's opinion about Pelayo's state of mind appears to be an opinion that the "bitch" comment, which was made right after Pelayo struck the felon, was indicative of Pelayo's state of mind at the time

9

of the prior incident. Chapman did not opine that the "bitch" statement was relevant to assessing Pelayo's state of mind when Elkins was shot. The Court detects nothing about Chapman's deposition testimony that would warrant reconsideration at this time.

Fourth, Plaintiffs have not demonstrated that the Court erred under FRE 404(b) in excluding evidence related to the prior incident. Plaintiffs point out that there are similarities between this case and the prior incident. The Court agrees that there are similarities. Similarity is required to show motive and intent. Charley, 1 F.4th at 647; Ayers, 924 F.2d at 1473. However, Plaintiffs overlook each of the dissimilarities identified by the Court, as well as additional dissimilarities identified in Pelayo's opposition to this motion. Further, there was also a materiality problem in that the key alleged statement, "you're lucky I didn't shoot your ass," did not clearly explain any actions taken by Pelayo on the prior incident and was made after all force had been used, the felon had been secured, and the felon, Pelayo, and the detective were walking out of the field.[2]

Fifth, the Court was not relying exclusively on the internal investigative report. The investigative report was relevant for two reasons. The report found that there was no excessive force, which undercut the assertion that Pelayo had a documented intolerance for suspects who flee. Further, the report concluded that Pelayo acted appropriately except for using discourteous language (not the "shoot your ass" statement). As explained in the prior order, the probative value of Pelayo's conduct during the prior incident was lessened.

Sixth, Plaintiffs have failed to demonstrate that a mini-trial would not be created if the Court allowed evidence relating to the prior incident. Pelayo has indicated that the results of the investigation, other witnesses, and significant evidence regarding the events of the prior incident would be necessary to address Plaintiffs' attempt to use his words during the incident. Pelayo also points out in this briefing that he would introduce additional evidence that he has bene involved in numerous foot chases over his entire carrier and has never had any complaints lodged against him that are remotely close to the prior incident. All of this indicates that a significant amount of court time would be taken up by witnesses, testimony, and evidence that is relevant only to evaluating

---

[2] Relatedly, the Court is not convinced that it has misapplied any pertinent FRE 404(b) Ninth Circuit authority.

whether Pelayo made the "shoot your ass" statement and the reasonableness of Pelayo's actions regarding the prior incident. In other words, it seems apparent that a mini-trial would result, and there is a real and substantial danger of jury confusion. Those dangers substantially outweigh any limited probative value that the statements or prior incident may have.

In sum, Plaintiffs have not shown any clear legal errors in the Court's analysis, rather, they show disagreement, which is insufficient to warrant reconsideration. See Deerpoint, 400 F.Supp.3d at 993; American States, 245 F.Supp.3d at 1227; Cunningham, 178 F.Supp.3d at 1003. This is the third time that the issue of the prior incident has been raised. In each instance, the arguments made by Plaintiffs have been slightly different. Nevertheless, the Court concludes that the prior incident remains inadmissible under both FRE 403 and 404(b), as discussed in this order, the Court's summary judgment order, and the Court's order on the motions in limine.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' trial brief/motion for reconsideration (Doc. No. 296) is DENIED.

IT IS SO ORDERED.

Dated:   May 23, 2022                               _____
                                                    SENIOR DISTRICT JUDGE